THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL ALLEN *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 83—2487, 83—2488 cons.

Opinion filed September 29, 1986.

James J. Doherty, Public Defender, of Chicago (Luther S. Hicks and Frank P. Madea, Assistant Public Defenders, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Howard E. Towles, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Michael Allen was found guilty of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2), and unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3). The jury also found defendant Richard Harp guilty of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2), unlawful restraint (Ill. Rev. Stat. 1983, ch. 38, par. 10—3), and unlawful use of a weapon (Ill. Rev. Stat. 1983, ch. 38, par. 24—1). The court sentenced Allen to 10 years and Harp to 20 years in the Illinois Department of Corrections. Both defendants appeal, contending that: (1) the trial court improperly denied the defendants' motion to suppress Harp's confession; (2) the trial court's statements during *voir dire* prejudiced the jury; (3) the trial court erred in admitting Harp's confession into evidence because it inculpated his codefendant Allen, who did not have an opportunity to cross-examine the declarant; and (4) statements made during the prosecutor's rebuttal closing argument prejudiced the jury. For the following reasons, we affirm.

The testimony at trial established that on December 31, 1982, Alexis Manhart flagged down a police squad car at the corner of Briar and Broadway streets on the near north side of Chicago. After explaining to the police officers that she had been robbed at knife point inside a van, she entered the squad car and the police retraced

the van's path. When they reached Belmont Avenue, the police parked and took down Manhart's statement. Immediately thereafter, Manhart observed the defendant's van proceeding west on Belmont. The van was subsequently apprehended, and Manhart identified its two occupants as her assailants.

Sergeant Gary Baronowski of the Chicago police department testified at trial that, while defendants Harp and Allen were being arrested and handcuffed, he looked into the van and found a Visa credit card, a small bracelet, and some papers which belonged to Manhart. He also discovered two knives which Manhart later identified as those used by the defendants during the robbery.

The van was then driven to the station house for an inventory search. Several other personal items belonging to the victim were recovered. No beer cans, whiskey bottles or traces of drugs were found in the van.

Baronowski and the other arresting officer, Lieutenant Michael Powers, both testified that at the time of the arrest, the defendants did not appear drunk or "high" on drugs. Moreover, the defendants did not smell of alcohol, stagger or slur their speech, or indicate that they were unable to comprehend instructions given to them.

Detective Thomas Keane testified that following the arrest, he advised the defendants of their *Miranda* rights and proceeded to interview them. Harp indicated that he understood his constitutional rights and then gave two different statements relating to his involvement in the crime. Harp initially stated that he had had too much to drink on the night in question and was asleep in the back of the van when he awoke to overhear a conversation between Manhart and Allen concerning the price of a sexual act. After Harp was shown several items belonging to Manhart found in the back of the van, however, he admitted "that he hadn't told the truth." He stated that he held a knife on Manhart, but denied taking any money from her. When asked if Allen had taken money, Harp replied that he did not want to say anything about Allen which would put him in prison.

Keane also corroborated the testimony of Baronowski and Powers concerning the physical condition of the defendants. He stated that he did not notice anything unusual about the defendants' appearance or behavior. According to Keane, the defendants had no trouble moving, talking, walking, or responding to questions.

At the pretrial hearing on the motion to suppress Harp's confession, Harp testified that he was too intoxicated from alcohol and drugs to have voluntarily waived the *Miranda* warnings given before making his confession. The trial court rejected this testimony, finding

it to be lacking in credibility. Even though the State failed to put on any witnesses, the court summarily denied defendant's motion to suppress.

## I

Defendants initially argue that the trial court improperly denied their motion to suppress Harp's confession. The basis for this argument is that the State failed to call all material witnesses to prove the voluntariness of Harp's confession by a preponderance of the evidence. The relevant statutory provision provides:

> "The burden of going forward with the evidence and the burden of proving that a confession was voluntary shall be on the State. Objection to the failure of the State to call all material witnesses on the issue of whether the confession was voluntary must be made in the trial court." Ill. Rev. Stat. 1983, ch. 38, par. 114—11(d).

The Illinois Supreme Court in *People v. Kincaid* (1981), 87 Ill. 2d 107, 429 N.E.2d 508, interpreted this provision stating that it is the State's burden to establish that a confession was "knowingly, intelligently and voluntarily made." (87 Ill. 2d 107, 116, 429 N.E.2d 509.) It is, however, within the sound discretion of the trial court to reverse the order of proof requiring the defendants to present evidence before the State. (*People v. Smith* (1966), 71 Ill. App. 2d 446, 219 N.E.2d 82, *cert. denied* (1967), 386 U.S. 910, 17 L. Ed. 2d 784, 87 S. Ct. 859; *People v. Davis* (1957), 10 Ill. 2d 430, 140 N.E.2d 675.) Thus, the State may meet its burden of proof after the defense has presented evidence on the issue of voluntariness.

Defendants rely on *People v. Peck* (1974), 18 Ill. App. 3d 112, 309 N.E.2d 346, for the proposition that the State must make an affirmative showing that a confession was voluntary and not simply impeach the credibility of the defendant's witnesses to sustain its burden of proof. *Peck* reversed the trial court's admission of the defendant's confession because the prosecutor failed to present any witnesses to show that defendant's confession was voluntary and not the product of police coercion. The court stated that "[i]t was improper for the trial court to disregard defendant's uncontroverted testimony. [Citation.] The trial court's finding that defendant's testimony was unworthy of belief was *** nevertheless collateral to the main issue of whether defendant's confession was the result of police coercion." 18 Ill. App. 3d 112, 116, 309 N.E.2d 346.

Defendants' reliance on *Peck* is misplaced. In contrast to *Peck*, the State, in the case before us, called all material witnesses at trial to

prove the voluntariness of Harp's confession.

■ In the instant case, the State met its burden of proof at trial as in *People v. McClure* (1976), 43 Ill. App. 3d 1059, 358 N.E.2d 23, where the court stated:

"[T]he trial court committed error in denying defendant's motion to suppress his statements after defendant testified without contradiction at the [pretrial] hearing that the statements were obtained without the police officers having advised him of his constitutional rights. However, the testimony adduced at trial clearly demonstrates that defendant had been given his warnings prior to the taking of any statements. \*\*\* The error committed by the trial court in denying the motion to suppress the statements at the time of the hearing was cured by the convincing trial testimony that defendant had been given timely advice of his constitutional rights." 43 Ill. App. 3d 1059, 1061-62, 358 N.E.2d 23.

Similarly, in the case before us, the trial court erred when it summarily denied the defendant's motion to suppress Harp's confession. At trial, however, the State presented the "convincing testimony" of the arresting officers, Baronowski and Powers, which was corroborated by Detective Keane. As in *McClure*, this evidence cured the trial court's error at the pretrial hearing, and the State met its burden of proof by showing that Harp properly waived his *Miranda* warnings and voluntarily gave his confession.

## II

■ The defendants next argue that they were unable to select a fair and impartial jury because of the trial judge's prejudicial comments made during *voir dire*. This argument is premised on the following exchange between the trial judge and a venireman:

"THE COURT: Any policeman or law enforcement people that you know of?

A: I know of none at the present time. But I \*\*\* [have] a close friend who is a retired police officer.

THE COURT: Do you ever talk to him about his job?

A: We used to, yes.

THE COURT: I [*sic*] that in any way going to affect your ability to be fair and impartial?

A: I would have to say that I think I would give more credence to a police officer's testimony. Only because I think they are trained observers.

THE COURT: Well, they are more professional, that's true.

But *the question is really not training, it is believability*. They will testify like any other witness.

Because he is a police officer, he might be more accurate in certain instances. *But would you consider just because he is a police officer -- there are lots of police officers -- his testimony should be more believable than any other witness because he is a police officer?*

A: Only because of the fact as I stated, that I believe he would observe the facts better than someone else.

THE COURT: Probably from the point of view of training?

A: Right.

THE COURT: But I am only asking you about believability as to integrity.

A: Truthfulness.

THE COURT: Truthfulness and integrity?

A: No, I don't think so.

THE COURT: You would treat him as any other witness in that case?

A: Yes.

THE COURT: I agree with you that to details they are probably trained for it and so forth. But integrity we are speaking of.

A: I don't think so.

THE COURT: You would treat them like anybody else?

A: Yes.

THE COURT: All right.

Again, do you agree with the statement that I made, that all victims are entitled to be protected under the law?

A: Yes, sir.

THE COURT: And the fact that the alleged victim in this case is a prostitute, would this in any way prevent you personally from being a fair and impartial juror?

A: I don't think so.

THE COURT: Can you think of any reason at all that you couldn't be fair and impartial?

A: No, sir."

The purpose of *voir dire* is to permit counsel and the judge to ascertain whether the minds of prospective jurors are free from bias and prejudice. (*People v. Carpenter* (1958), 13 Ill. 2d 470, 150 N.E.2d 100, *cert. denied* (1958), 358 U.S. 887, 3 L. Ed. 2d 115, 79 S. Ct. 128; *People v. Stack* (1984), 128 Ill. App. 3d 611, 470 N.E.2d 1252; *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) Furthermore,

reversible error will only be found where the trial judge's conduct during *voir dire* amounted to an abuse of discretion and thwarted the selection of an impartial jury. See *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066.

Defendants cite three cases in support of their argument that the trial judge's comments on the accuracy of police testimony prejudiced the jury. These cases, however, only highlight the deficiency of defendants' argument. For example, in *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491, relied on by defendants, the trial judge questioned every witness, emphasizing "testimony which pointed to guilt and, \*\*\* casting discredit upon \*\*\* a key witness for the defense." (24 Ill. 2d 93, 99, 180 N.E.2d 491.) Based upon this extremely prejudicial conduct, the supreme court ordered a new trial.

■ The case at bar is in sharp contrast to *Santucci*. Unlike *Santucci*, the effect of the judge's questioning here did not predispose the jury against the defendant's case. Rather, the record discloses that the purpose of the judge's questioning was to root out any jurors who would give undue weight to the credibility of police testimony. The judge's comments on the accuracy of police testimony certainly did not rise to the level of prejudice found in *Santucci*, and, therefore, are not sufficient to order a new trial. As a result, we reject defendants' contention that they were denied a fair and impartial trial.

### III

■ Defendants next argue that the trial court should not have admitted Harp's confession since it had incriminating implications as to Allen, and Harp was not subject to cross-examination. This argument is based on the constitutional principles enunciated in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. In *Bruton*, the United States Supreme Court held that a codefendant's statement which acknowledged the commission of the crime by the declarant and directly implicated his codefendant violated his constitutional right to cross-examination.

The facts of the instant case do not constitute a *Bruton* violation. In *Bruton*, a codefendant confessed his own involvement as well as his codefendant's participation in the crime. (*Bruton v. United States* (1981), 391 U.S. 123, 125, 20 L. Ed. 2d 476, 478-79, 88 S. Ct. 1620, 1622.) The trial court admitted the statement into evidence, but gave a limiting instruction to its incompetence as against Bruton. The Supreme Court reversed, holding, in essence, that the confrontation clause of the sixth amendment gave the accused the right to confront the witnesses against him and this right was abridged when an out-of-

court statement inculpating the accused was allowed into evidence and the accused had no opportunity to cross-examine the declarant. 391 U.S. 123, 126, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1620, 1623.

Unlike *Bruton*, in the instant case Harp's statements given to police investigators did not directly implicate Allen. While Harp confessed his own participation in the offense, he refused to make any statement as to Allen's activities. Any reference Harp made to Allen was nothing more than a reflection on Harp's reluctance to say anything incriminating about his codefendant. Indeed, it is highly speculative to say that the jury could have inferred guilt on Allen's part from Harp's confession. We cannot agree with this conclusion, nor is it supported by *Bruton* or Illinois case law that has followed *Bruton*.

Defendants cite several Illinois cases in support of their argument, none of which are controlling in this case. *People v. McVay* (1981), 98 Ill. App. 3d 708, 424 N.E.2d 922, stands for the proposition that a codefendant's statement which clearly points toward his codefendant's guilt is inadmissible at trial. In *McVay*, the defendant's statement was that if he "went down" his codefendant would "go down with him." 98 Ill. App. 3d 708, 716, 424 N.E.2d 922.

Defendants also cite *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401, where a guilty verdict was reversed because the trial court admitted into evidence a codefendant's statement that his partner committed the criminal act, and the two split the proceeds. (40 Ill. 2d 154, 157, 238 N.E.2d 407.) *Miller* referred to *People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413, also cited in defendants' brief. *Clark* reversed the trial court's admission of a statement into evidence which directly included a codefendant in the same criminal act. (17 Ill. 2d 486, 490, 162 N.E.2d 413.) All of these cases relied on by defendants are inapposite because the statements made there directly inculpated the codefendants, as was not the case here. In the present case, Harp did not imply that his codefendant had engaged in any criminal acts, but rather was reluctant to say anything about Allen for fear of incriminating him. We therefore conclude that Harp's confession was properly admitted at trial.

IV

■■ ■ Lastly, the defendants argue that they were denied a fair trial because of allegedly prejudicial comments made by the prosecutor during his rebuttal closing argument. Defendants' objections at trial ranged from the prosecutor stating personal beliefs concerning the case to making inflammatory insinuations about defense counsel.

In considering defendants' contentions, we note that a prosecutor is allowed great latitude in closing argument, and absent an abuse of discretion, the trial court's determination as to the propriety of the comments made will be followed. (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 428 N.E.2d 1087.) A prosecutor's remarks made during closing argument constitute reversible error only where those remarks were such that, without their having been made, the jury might have reached a different result. *People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988.

While the record before us reveals some excessive statements by the prosecutor, none of these statements viewed in light of all the evidence warrants a new trial. Given the overwhelming evidence of defendants' guilt, these statements were not so prejudicial as to have been a material factor in defendants' convictions or to have denied them a fair trial. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) The trial court did not abuse its discretion and we will not disturb its determination as to the propriety of the prosecutor's comments.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.