Glen Eddie GARCIA, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 88–98.

Supreme Court of Wyoming.

July 24, 1989.

Student Intern, argued, Wyoming Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., argued, for appellee.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and LEIMBACK, District Judge.

LEIMBACK, District Judge.

This appeal is from appellant's conviction for the burglary of a Cheyenne Convenience Plus store. A motion to suppress defendant's confession was filed prior to trial. A hearing was held, and the motion was denied. After the trial, defendant filed a motion for new trial contending that statements made by one juror to others during deliberations constituted an extraneous prejudicial presentation of evidence. This motion was also denied after a hearing on the matter. It is from this judgment and these denials that defendant appeals.

We affirm.

Appellant presents three issues for our determination which are as follows:

I. Did the trial court err in failing to grant the defendant's motion to suppress, by requiring the defendant to assume the burden of going forward, and in failing to make requisite findings of voluntariness?

II. Did the trial court err in admitting into evidence a confession not proven by a preponderance of the evidence to be voluntary?

III. Did the trial court err in denying appellant's motion for new trial based on the improper presentation of extraneous prejudicial evidence to the jury?

The State of Wyoming rephrases the issues in the following fashion:

I. Whether the district court correctly denied appellant's motion to suppress his confession?

II. Whether it was proved by a preponderance of the evidence that appellant's statement was voluntarily given?

Leonard Munker, State Public Defender, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and David F. Askman,

III. Whether it was proper for the trial court to deny appellant's motion for a new trial?

The events leading up to appellant's burglary conviction transpired as follows. On the morning of March 21, 1987, the manager and the clerk of a Convenience Plus store in Cheyenne discovered that cash, checks, food stamps, and cigarettes had been taken from the store. Due to the fact that the store alarm had not sounded the previous evening and there was no sign of a forced entry into the store, the investigation suggested that the burglar had gained access to the store by using a set of store keys. The store clerk speculated that her keys were the ones used to gain access to the store because on the morning of the 21st they were not in the proper compartment in her purse and the front door to her home was unlocked, whereas it had been locked the previous evening. The clerk informed the police that her sister Juanita Taylor and her sister's boyfriend Glen Garcia knew where she kept the store keys. The police questioned Juanita Taylor about the burglary, but, due to lack of evidence, the case was closed on April 16, 1987. It was reopened after appellant confessed to committing the burglary.

A sequence of events occurred before appellant made his confession on July 25, 1987. First, Juanita Taylor was arrested and incarcerated on June 23, 1987, for aiding and abetting an auto burglary. Subsequently, a Cheyenne police officer conversed with Juanita's mother and told her that if Glen Garcia would talk to the police about his involvement in the Convenience Plus store burglary, it might help Juanita to be released from jail. At about 5:00 p.m. on June 24, 1987, Glen Garcia approached the officer outside of the police station and inquired about Juanita. Again the police officer reiterated that Juanita might be released if Glen chose to state what he knew about the burglary. The following morning, after proper Miranda warnings were given, Glen Garcia confessed to committing the burglary. On the same day, the charges against Juanita were dismissed, and she was released from jail.

I. The initial contention is that the trial court should have granted the appellant's motion to suppress because the prosecution did not assume the burden of going forward. Instead, the appellant was required to present his witnesses first.

■ This court recognizes that there is a clear distinction between the terms "burden of proof" and "the burden of going forward" with the evidence.

The phrase "burden of proof" is often used as meaning the necessity of establishing a fact to a legally required extent, or the necessity of finally establishing a fact.

*Tench v. Weaver*, 374 P.2d 27, 29 (Wyo. 1962). The burden of proof never shifts from one party to the other at any stage in the proceeding. On the other hand, "going forward with the evidence" is a procedural obligation, and it can shift from party to party during the course of a trial. *State v. Carter*, 214 Kan. 533, 521 P.2d 294, 297 (1974).

■ The State always has the burden of proving by a preponderance of the evidence that the confession was voluntary. *Dodge v. State*, 562 P.2d 303, 308 (Wyo.1977). On the other hand, the movant at the suppression hearing may be required to go forward with the evidence. The logical and traditional order of proof is to allow the defendant to present his evidence on the issue of the involuntariness and then let the State rebut the issue. The Illinois appellate court has expressly approved this procedure, and we will follow suit and hold that the State has the burden to establish that the confession was voluntarily made. It is, however, within the sound discretion of the trial court to reverse the order of proof requiring the defendants to present evidence before the State. *People v. Allen*, 148 Ill.App.3d 200, 101 Ill.Dec. 514, 498 N.E.2d 838, 840 (1986).

■ Appellant argued that the trial court failed to make requisite findings of voluntariness. This court has held that where the evidence of voluntariness is seri-

ously in dispute, the trial court must expressly find that the statements were voluntary. *Frias v. State*, 722 P.2d 135, 143 (Wyo.1986). If the finding of voluntariness can be ascertained from the record, the court need not make an express finding. *Dodge*, 562 P.2d at 310. The better practice is for the trial judge to expressly state that the statements were voluntarily made and why he determined that they were voluntary, rather than making a bold statement that the motion to suppress is denied. *Dodge*, 562 P.2d at 309. This is due in part to the fact that the resolution of conflicting evidence is within the province of the trial court, and its findings must be given great weight when considered in light of its opportunity to hear and observe the witnesses. *Marken v. Goodall*, 478 F.2d 1052 (10th Cir.1973).

Here, the evidence of the voluntariness of the confession was not in grave dispute; both Officer Olivo and appellant testified that the Miranda rights were properly waived. At the conclusion of the suppression hearing, the trial court denied the motion and stated that the "court finds that the constitutional rights of the defendant in this particular case, in the course of obtaining this confession, have not been violated." We conclude that the trial court did make an express finding that the confession was made voluntarily.

II. Appellant argues that his confession was not proven by a preponderance of the evidence to be voluntary.

■ The due process clause of the Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." The purpose of the clause is to exclude evidence that has been obtained in violation of the Constitution. Therefore, whenever the State obtains a confession it has the burden by a preponderance to demonstrate that the statement was not obtained in violation of the Miranda doctrine and that the statement was given voluntarily. *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A confession is not voluntary if extracted by threats or improper influences or prom-

ises. *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); *State v. Stotler*, 168 W.Va. 8, 282 S.E.2d 255 (1981). Furthermore, the United States Supreme Court holds that coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the due process clause of the Fourteenth Amendment. *Colorado v. Connelly*, 479 U.S. at 167, 107 S.Ct. at 522.

■ Under *Connelly*, once the evidence establishes official coercion, a court must consider the effect of that coercion on the defendant's choice to confess. Unless coercive conduct caused the defendant to confess, the defendant voluntarily confessed and his statement is admissible. *Colorado v. Connelly*, 479 U.S. at 157, 107 S.Ct. at 517. We recognize that coercion can be mental as well as physical. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). Additionally, the use of tricks or factual misstatements in and of itself does not render a confession involuntary. There must be coercion involved, and a misstatement of fact is not coercion. While a misstatement may affect the voluntariness of the confession, the effect of misstatement will be considered in light of all the surrounding circumstances. *State v. Manning*, 506 So.2d 1094 (Fla.App.1987).

■ In the past, this court has applied a two-part test to determine if the waiver of the right to remain silent was made voluntarily, knowingly, and intelligently. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Secondly, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Frias v. State*, 722 P.2d at 142. In determining whether the statement made by an accused is voluntary, the totality of the circumstances surrounding the interrogation must be examined. *Id.*

Furthermore, evidentiary rulings are within the sound discretion of the trial court. We defer to them absent appellant's clear showing of an abuse of that discretion. *Arnold v. Mountain West Farm Bureau Mutual Insurance Company, Inc.*, 707 P.2d 161, 165 (Wyo.1985); *Mintle v. Mintle*, 764 P.2d 255, 257 (Wyo. 1988); *Lawrence v. Farm Credit System Capital Corporation*, 761 P.2d 640 (Wyo. 1988). We have defined an abuse of discretion as an error of law committed by the court under the circumstances. *Lawrence* at 653; *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980).

▆ Appellant argues that his confession is inadmissible because it was procured by the promise to release his girlfriend from jail. We realize that at times a promise for leniency presents a compelling basis for a court to determine that the confession is inadmissible. This is not the case presented here today.

The circumstances in this case reveal that the appellant initiated the confession by seeking out the officer and inquiring how he could help his girlfriend out of jail. The police officer responded by telling the appellant that if he confessed to the burglary, the district attorney may act more favorably towards the appellant and his girlfriend. The appellant later called the police officer and stated that he wished to confess to the burglary. The following morning he went, on his own accord, to the station and made his statement. He was not arrested or subjected to prolonged or harsh interrogation techniques. He was given proper Miranda warnings, and he knowingly waived assistance of counsel. The appellant testified at the suppression hearing that he fully understood his Miranda rights and the ramifications of confessing to the crime. This was illustrated in the suppression hearing when appellant's attorney asked him if he had asked the officer if he was going to be charged with anything or arrested after he confessed to the crime. The appellant responded by stating:

No. I figured that I was, anyway. It's only obvious when you go into the police department and confess to something that's against the law, they are going to arrest you right on the spot. You know, I didn't even believe he wasn't going to arrest me.

The circumstances in which appellant made his statement in this case do not provide sufficient grounds for holding that the statement was involuntary. The confession met the two-part test outlined above, in that it was not a result of police coercion or deception and appellant fully understood his rights and the consequences when he made his statement. If a misstatement was made, it did not constitute police coercion. Furthermore, the trial court is in the best position to view the credibility of the witnesses. The above circumstances are sufficient to find that the confession was voluntarily made. Absent abuse of discretion or plain error, we will not disturb its decision. Therefore, we will defer to the trial court's ruling and hold that the preponderance of the evidence demonstrated that the confession was voluntary.

▆ Moreover, the fact that the judge made a pretrial determination on the voluntariness of the confession did not undercut the appellant's prerogative to challenge the confession's reliability during the course of trial. *Crane v. Kentucky*, 476 U.S. 683, 688, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The jury was given two instructions concerning appellant's theory that the confession was involuntary. The jury had the opportunity to assess the evidence, the accuracy and voluntariness of the confession, which it did, and resolved the issue by finding the appellant guilty. Therefore, the appellant cannot demonstrate that admitting the confession was prejudicial error which has adversely affected a substantial right, *Shields v. Carnahan*, 744 P.2d 1115, 1117, (Wyo.1987); *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 934 (Wyo.1981), because he was given a meaningful opportunity to defend his position.

III. Finally, appellant argues that an extraneous statement made by one juror to the remaining jurors during the deliberation warrants a new trial.

▆ The Sixth Amendment of the United States Constitution guarantees a right

to a jury trial by a panel of impartial jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. Hence, the verdict must be based upon evidence developed at the trial. *Turner v. Louisiana,* 379 U.S. 466, 471–472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). When jurors consider extrinsic evidence, a new trial is required if the evidence poses a reasonable possibility of prejudice to the defendant. *United States v. Perkins,* 748 F.2d 1519, 1533 (11th Cir. 1984).

The Wyoming Rules of Evidence state that when an inquiry into the validity of a verdict is made, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received. But a juror may testify on the questions of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. W.R.E. 606(b).

Here, the controversy arose when the jury foreman notified the public defender that an extraneous statement had been made during the jury deliberation. The appellant was afforded a post-trial hearing, and the juror who made the statement was questioned about its contents. He testified that during the jury deliberation comments were made of why the defendant was wearing handcuffs and that he had responded by stating that the defendant had been in trouble before and that nothing further was said about the matter. When asked by the court how he knew that the defendant had been in trouble before, the juror stated that he saw the defendant at his wife's court a couple of times and that his wife worked at municipal court. No further testimony was elicited from the juror, and at the conclusion of the hearing the trial judge denied the motion for a new trial.

In order to authorize a post-verdict inquiry there must be clear and substantial evidence, if not wholly conclusive evidence. *King v. United States,* 576 F.2d 432, 438 (2d Cir.1978). In this case there was insufficient evidence to demonstrate the existence of jury influence by prejudicial extraneous information so as to warrant a post-verdict inquiry. The jury was properly instructed to decide the case based upon the evidence produced. During the voir dire proceedings the juror was never directly asked if he knew the defendant or knew anything about him. Consequently, there is no proof that the juror possessed a preexisting bias against the defendant. Also, there was no evidence that an outside influence may have affected the juror's verdict or that the statement played any part in the jury's verdict—ingredients necessary to justify a juror inquiry. But, rather the juror's statement was a natural probable consequence of an innate curiosity of why the defendant was wearing handcuffs. After the statement was made, the jury continued with the resolution of the issues. The statement was simply part of the jury's deliberation. The fact that one juror was permitted to testify about what another juror had said during the deliberations constitutes an unwarranted intrusion into jury deliberations. *United States v. Aimone,* 715 F.2d 822 (3rd Cir.1983).

Normal jury deliberations constitute no grounds for overturning a verdict nor indeed rendering a verdict invalid merely because the jurors' generalized knowledge about the parties or some other aspect of the case is an ingredient of the decision. It is not necessary that jurors be totally ignorant about a case, *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 151 (3rd Cir.1975), because it is an impossible standard to require that the jury be a laboratory, completely sterilized and freed from any external factors. *United States ex rel. Owen v. McMann,* 435 F.2d 813 (2nd Cir.1970).

The United States Supreme Court states that

due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be

constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). We find the Court's reasoning persuasive and applicable to the instant case and note that the appellant was afforded all the due process requirements mandated by law.

Generally, the granting of a motion for new trial is within the sound discretion of the trial court, and its decision shall not be reversed unless there has been an abuse of discretion. *Daellenbach v. State,* 562 P.2d 679 (Wyo.1977); *Jones v. State,* 568 P.2d 837 (Wyo.1977). Although we conclude that the post-verdict inquiry was unfounded, there is no showing of prejudice to the appellant that would require a reversal in this instance.

We have examined the record and find the court did not err in denying the motion to suppress and the motion for new trial for the reasons previously set forth. Judgment of the trial court is affirmed.