Max DICE, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–43.

Supreme Court of Wyoming.

Jan. 30, 1992.

Leonard D. Munker, State Public Defender and Donald E. Miller, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and Stuwert B. Johnson, Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

Appellant Max Dice was caught in the act during a nighttime bar burglary and appeals from his conviction. Dice contends the trial court erred in denying a requested intoxication instruction, in allowing prosecutorial misconduct and in the improper introduction of his confession and other evidence.

We find no reversible error and affirm the conviction.

## I. STATED ISSUES

Max Dice, for reversal of his burglary conviction, asks:

I.  Whether the trial court erred in refusing appellant's requested Instruction "A" which set forth in one instruction that the burden of proof was upon the state to prove beyond a reasonable doubt that appellant was not intoxicated to the extent that he was unable to form the required specific intent to be found guilty of burglary.

II. Did the prosecutor's closing comments amount to prosecutorial misconduct when the prosecutor erroneously stated the appellant had the burden of proving intoxication?

III.  Whether it was improper for the trial court to allow into evidence irrelevant and prejudicial testimony and evi-

dence regarding appellant's worker's compensation claim and his in forma pauperis affidavit.

IV. Should the appellant's initial statements and confession given to police officers have been suppressed by the trial court on the grounds that the statements were given while under threats and intimidation, that appellant was too intoxicated to voluntarily and knowingly waive his Fifth Amendment rights and for failure by the police to properly Mirandize appellant?

V. Did the refusal to give appellant's jury Instruction "A", the prosecutorial misconduct, the admission of irrelevant and prejudicial evidence and the denial of appellant's motions to suppress appellant's statement and his confession create cumulative errors which were pr[e]judicial to appellant?

The State rephrases:

I. Did the district court err in refusing to give appellant's requested jury instruction on the intoxicated defense?

II. Was the prosecutor's closing argument erroneous in that it informed the jury that the burden to prove the defense of intoxication lay upon the defendant or that the state's burden of proof beyond a reasonable doubt did not apply to appellant?

III. Did the district court err in admitting into evidence appellant's affidavit for court-appointed counsel and testimony regarding his employment status?

IV. Did the district court err in denying appellant's motion to suppress statements he had given to the police?

V. Did the district court commit multiple errors the cumulative effect of which requires reversal of appellant's conviction?

## II. FACTS

This case presents no significant factual conflict except for the theory of defense

that Dice was too intoxicated to know what he was doing when he entered Fran's Starlite Lounge late at night after it was closed and proceeded to gather up the cash register money. The money was found by the police in Dice's pockets when he was apprehended and arrested inside the building. Dice claimed intoxication prevented formation of the specific intent for burglary.[1] He did not deny making the entry and the attempted taking. The jury returned a guilty verdict resulting in a two-and-one-half to three-and-one-half year confinement sentence with credit for presentence time in jail.

Shortly after 3:00 a.m., alert Casper, Wyoming police officer Karen Flint and another officer on business building patrol observed a broken and opened barroom building window. Officer Flint entered the building and then discovered and apprehended Dice. He was found hiding in the rafters above the women's rest room in the back of the building. Upon arrest, his pockets contained a key ring holding four cash register keys and change from the register consisting of 107 quarters, 219 dimes, one half-dollar and fifty-eight nickels, a total of $52.05. The cash registers were open and empty but for a few pennies.

As Dice was placed under arrest, he was asked, without Miranda warning, whether there was anyone else in the building. His response creates one of the appellate issues. That event, without conflict in the record, is described in the testimony of Officer Flint:

Q. Prior to that time [process of handcuffing], had you asked him any questions?

A. As he was being handcuffed, I asked him what his name was.

Q. Did he give you that?

A. Max Dice.

Q. Did he have any hesitancy about that?

A. No.

Q. What else did you ask him?

---

**1.** W.S. 6-3-301(a) provides:

A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

A. I asked him if there was anyone else in there.

Q. Why did you ask him that?

A. For officer safety, to know whether we needed to look further at that particular point, if the other guy was still going to keep going. We still didn't know if he would say if there was anyone else in there.

Q. What did he respond to that?

A. He said no. Then he said, "Can I talk to you?"

Q. Was that in response to any question you had asked?

A. No.

Q. After he said he wanted to talk to you, did he say anything else?

A. He told me that his friends had forced him to do it, that they had broken the window and thrown him inside.

Immediately after his arrest, Dice was taken to the police station. After a Miranda warning, Dice gave police officers a statement admitting he entered the bar through the broken window and removed change from the cash registers. The interrogating officer recorded the statement in the officer's handwriting. Dice wrote and signed the final paragraph of the statement at 5:05 a.m.:

I MAX DICE HAVE READ THE ABOVE STATEMENT CONSISTING OF THIS PAGE AND ONE OTHER, AND IT IS TRUE & CORRECT AS WRITTEN.

[Written Signature] Max Dice

The State's case consisted of a suspect caught in the act at the location, with stolen money in his pockets, and the accommodating signed statement.

### III. DISCUSSION

#### A. Denied "Theory of the Defense" Intoxication Instruction

At the time of the burglary, Dice was twenty-years old and, consequently, any drinking he might have done was illegal. On the day just prior to these events, he had returned to Casper from South Dakota. Dice spent the afternoon and evening in a steady course of drinking beer followed with Canadian Lord Calvert or Jack Daniels which was mixed with Coke. Generally, the substance of Dice's testimony at trial was that he had become too drunk to know what was going on and had no personal recollection or knowledge of events during the late evening including the period of some substantial time before the break-in occurred.

Dice's proposed Instruction "A," which was rejected by the trial court, stated:

YOU ARE INSTRUCTED that the State must prove beyond a reasonable doubt that the defendant was not intoxicated to the extent that he was unable to form the required specific intent to commit the offense of Burglary.

In addition to the general presumption of innocence instructions, the trial court also gave instructions relating to specific intent and intoxication:

### INSTRUCTION NO. 8

The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term[ ] implies, means more than the general intent to commit the act. To establish specific intent, the state must prove that the defendant knowingly did an act which the law forbids, specifically intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

### INSTRUCTION NO. 9

To constitute the crime charged there must be a union of two essential elements—an act forbidden, and a specific intent.

Specific intent means more than the general intent to commit the act. To prove a crime which involves specific intent, the prosecution must prove beyond a reasonable doubt:

1. That the defendant did the act charged; and

2. That he did it with the specific intent described in the crime charged.

The specific intent in the crime charged is the specific intent to commit larceny, and that must be proved beyond a reasonable doubt as any other fact in the case.

## INSTRUCTION NO. 10

Voluntary intoxication is no excuse for the commission of a crime. However, pertinent portions of the Wyoming Statutes provide that "[w]here a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proved to the jury, as bearing upon the question of intention."

Thus, evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted, or failed to act, with specific intent as charged.

## INSTRUCTION NO. 11

The degree of voluntary intoxication necessary to constitute a defense to the charge herein must [be] of such a nature as to render the accused incapable of forming the specific intent to steal.

## INSTRUCTION NO. 16

YOU ARE INSTRUCTED that it is the defendant's theory of the case that he, Max Dice, did not enter or remain in Fran's Lounge, Casper, Natrona County Wyoming on August 10, 1990, with the intent to commit a larceny. The defendant contends that he was intoxicated to such an extent that he could not have formed the specific intent to commit a larceny.

■ We find the instructions which were given to be adequate and complete. The theory of defense was carefully described and, in addition, no objection was taken by Dice to the text of any of those instructions which were given. The proposed Instruction "A" was not actually a theory of defense instruction. It presented a substantive legal adaptation as a rule to be used to support the theory of defense. The theory of defense was specifically and accurately defined by Instruction No. 16 which was given. The necessity for another instruction on the same subject could be properly rejected as repetitive. *Oien v. State,* 797 P.2d 544 (Wyo.1990); *Griffin v. State,* 749 P.2d 246 (Wyo.1988). The criteria and requirement for a theory of defense instruction addressed in detail in *Oien* was satisfied completely by the instructional process followed here by the trial court. As the Supreme Court in Connecticut stated: " ' "a request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. * * * [A] refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." ' " *State v. Gabriel,* 192 Conn. 405, 473 A.2d 300, 308 (1984) (quoting *State v. Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980)). *See also State v. Jennings,* 216 Conn. 647, 583 A.2d 915 (1990). We find no instructional error.

B. *Prosecutorial Misconduct in Closing Argument Regarding Burden of Proof on Intoxication*

■ The substance of the prosecutor's contested comments in final argument involved his challenge to the credibility and reliability of the testimony presented by both Dice and his associate who was "around" during the day-and-night drinking episode and the time subsequent to the bar-building entry. The prosecutor referenced one of the trial court's instructions that the jury is the judge of the witnesses' credibility and then stated:

Perhaps the most important part of the Instruction says that in so doing, you may take in to consideration all of the facts and circumstances in the case and give such weight as you think the same are entitled to in the light of your experience and knowledge of human affairs. What that tells you, Ladies and Gentlemen, is to use your common sense.

The Defendant has many rights in our system. He is entitled to a jury trial. He is entitled to a presumption of innocence and reasonable doubt and all those things.

The State would have you give him those things, but one thing that he is not entitled to is an acquittal based on the type of testimony that he and Mr. Lemp presented to you.

To come before you because I am the Defendant, you must believe this stuff and you must find beyond a reasonable doubt that I committed the crime. That is one thing he is not entitled to.

This argument generally contained the "you do not have to believe him" attack on defense testimony. The prosecutor addressed an essential thesis of Dice's lack of credibility as a testifying witness.

■ This court addressed the standard of review for reversal of a conviction based on contended prosecutorial error where no objection was made in *Jeschke v. State*, 642 P.2d 1298, 1301–02 (Wyo.1982):

In presenting a closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function. * * * The purpose of closing argument is to give both the prosecution and defense counsel the opportunity to explain the significance of the evidence and how it should be viewed. * * * Finally, we have previously said that the scope of permissible argument, as well as the injury caused by misconduct, are best determined by the trial judge.

The reviewing court's examination must focus on whether there was a substantial risk of a miscarriage of justice. *Com. v. Haskins*, 411 Mass. 120, 578 N.E.2d 788 (1991).

■ The trial court must permit counsel a wide latitude in the scope of argument to avoid unreasonable restraint in commenting on or interpreting the evidence. *Herdt v. State*, 816 P.2d 1299, 1301 (Wyo.1991). The breadth of permissible argument was examined in *State v. Reynolds*, 120 Idaho 445, 816 P.2d 1002, 1006 (1991):

Counsel for both sides traditionally have been afforded considerable latitude in their arguments and have the right to discuss fully the evidence and inferences and deductions arising therefrom.

It is clear that great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame prejudice or mislead the jury. *People v. Wright*, 218 Ill.App.3d 764, 161 Ill.Dec. 444, 578 N.E.2d 1090 (1991).

■ The first responsibility for the deterrence of contended improper conduct by the prosecution belongs to appellant's trial counsel. *See Barela v. State*, 787 P.2d 82 (Wyo.1990). The prompt objection to misconduct allows the trial court to weigh the impact of the comments and assess curative measures. These measures occupy a varied range including: simply sustaining the objection; sustaining the objection and admonishing or instructing the jury to ignore the comments; or, for the most flagrant abuse, ordering a mistrial or a directed verdict for the defendant. *See Noetzelmann v. State*, 721 P.2d 579 (Wyo.1986) and Vess, *Walking a Tightrope: A Survey of Limitations on the Prosecutor's Closing Argument*, 64 J.Crim.L. and Criminology 22 (1973). *Cf. Adams v. State*, 585 So.2d 1092 (Fla.App.1991) and *State v. Bolt*, 108 Or.App. 746, 817 P.2d 1322 (1991), where proper objections were made.

■ The trial counsel initiates the curative process with the decision to object. J. Stein, Closing Argument § 86 (1985 & Supp.1991). However, trial counsel, acting as a zealous advocate for his client, may make a tactical decision not to object perhaps from the belief that drawing attention to the prosecutor's comments lends credibility or perhaps because in trial counsel's estimation, the jury has not been swayed by the comment. *See State v. Brown*, 310 Or. 347, 800 P.2d 259 (1990). The fact that such routine strategic decisions are made during the course of a trial supports the well-reasoned rule that failure to object is considered a waiver. *Bennett v. State*, 377 P.2d 634 (Wyo.1963).

■ In context of the openness permitted during closing arguments, the prosecutor's comments in this case, although per-

haps imprecisely phrased or even confusing when examined out of context, were at best questionable error and certainly not plain error. Plain error in closing argument must remain hard to find because otherwise the trial court becomes charged with an adversary responsibility to control argument even when objection is not taken by the opposing attorney. This exchange certainly does not fit within the plain error requirement for prosecutorial misconduct in closing argument. We find no error in the prosecutor's argument which, in the context of plain error, requires our consideration of reversal of the jury verdict in this case. *Wheeler v. State*, 691 P.2d 599, 605 (Wyo.1984); *People v. Pecoraro*, 144 Ill.2d 1, 161 Ill.Dec. 296, 578 N.E.2d 942 (1991).

### C. *Testimonial Error Regarding Worker's Compensation Injury Status*

■ A basic component of the defense was the allegation that because of excessive drinking before the burglary, Dice did not remember talking to the officer at the jail nor reading and signing any statement. Consequently, voluntariness of his signed statement was attacked by diligent defense counsel in suppression efforts both before and during trial. The trial court's admission of the statement placed at issue Dice's alcohol consumption and memory on the date of the burglary as well as his signature pattern.

Dice, in his initial testimony, stated in answering a question of his counsel that at the time of the arrest he was working for a drilling company. Cross-examination pursued his contrary status of having received a worker's compensation injury approximately three weeks before the burglary, having filed a claim and then never having returned to work before the date of this offense. Dice not only denied any knowledge of signing the statement, but on cross-examination could not remember being injured or previously signing the worker's compensation claim document, which also contained his apparent handwriting. Dice did admit he had signed an affidavit to request legal services. After careful ex-

amination of potential prejudice, the trial court admitted the affidavit but not the claim form as a handwriting comparator with his writing on the confession statement.

A review of Dice's testimony demonstrates his skilled selective recall on the issue of alcohol consumption:

Q. [By appellant's counsel on direct examination]: Is there any time during the evening at Fran's that you don't remember?

A. [By appellant]: Yes.

Q. Can you describe those circumstances?

A. I remember walking in to the Bar and sitting down and drinking mixed drinks and beer. I don't remember nothing [sic] after that. * * *

   \*    \*    \*    \*    \*    \*

Q. [By the prosecutor on cross examination]: When you were at Fran's, did you remember buying any drinks?

A. [By appellant]: No, I don't remember.

Q. Do you remember what you were drinking the whole time you were there?

A. No I don't.

Q. Do you recall any of what you were drinking while you were there?

A. No.

   \*    \*    \*    \*    \*    \*

Q. [By appellant's counsel on redirect]: Do you recall what it was you were drinking that night [at Fran's]?

A. [By appellant]: Yes.

Q. What was it?

A. I started out with CLC [Canadian Lord Calvert] and Coke and Budweiser.

■ The extended course of denials in Dice's testimony surely tested credibility and we find no decision of the trial court which reaches an abuse of discretion. *Grabill v. State*, 621 P.2d 802 (Wyo.1980). It is an evidentiary rule uniformly applied that admission of evidence rests in the sound discretion of the trial court. *L.U. Sheep Co. v. Board of County Com'rs of County of Hot Springs*, 790 P.2d 663 (Wyo.1990). The course of Dice's testimony was consist-

ent but for his denials of clearly determinable facts such as his handwriting style. The jury undoubtedly considered these denials in the assessment of credibility. *Broom v. State*, 695 P.2d 640 (Wyo.1985). We find no abuse of discretion by the trial court in the admission of the testimony which related both to credibility and to the style of Dice's handwriting as demonstrated by documents which he had signed. *Longfellow v. State*, 803 P.2d 1383 (Wyo. 1991); *Ortega v. State*, 669 P.2d 935 (Wyo. 1983).

### D. *Suppression*

In actuality, the prior issues are precursory because this issue was essentially decisive. Dice's statement coincided directly with both undisputed facts and the testimony of the arresting officer. It would likely follow that introduction of the statement would be determinative for the jury. If the jury found Dice was competent to know what he said in the statement when he said it, they would probably also assess that he knew what he did a couple of hours earlier in using the rock found in his pocket to break the outside window in order to crawl into the bar to rifle through the cash registers, as he unquestionably did.[2]

The first admissibility dispute arose after the arresting officer, as a trial witness, repeated Dice's statement about his having been pushed into the building. Dice made this statement while he was being handcuffed lying face down on the barroom floor. If the non-responsive statement was culpable, it was certainly non-interrogative. Officer Flint properly asked Dice, for her safety and that of others at the scene, if anyone else was in the bar. Such police questioning prompted out of concern for officer safety or public safety does not require prior Miranda warnings. *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). The officer's question was not directed toward obtaining evidence against Dice, but instead toward the immediate necessity of determining whether someone else was inside the bar presenting a potential threat. *United States v. Padilla*, 819 F.2d 952 (10th Cir.1987). Dice's subsequent voluntary statement was not obtained in violation of Fifth Amendment rights and does not require suppression as an illegal fruit of a Miranda violation.

The trial court's consideration of suppression of Dice's barroom comment and written statement that followed two hours later in the jail provided a factual examination of the evidence of voluntariness. That evidence demonstrated realistically that Dice could talk logically, could read and write, and what he said made practical sense within the totality of all of the facts and circumstances presented. In responding to the suppression request at the first suppression hearing, the trial court summarized and determined:

THE COURT: Well, I am going to deny the Motion to Suppress. I don't find any basis whatsoever to the suggestion that the Defendant was so intoxicated he couldn't freely and voluntarily respond. To the contrary, I find that the statements attempted to be suppressed were voluntary at the outset at the store, were made without inquiry at the police station and after full [c]onstitutional warnings were fully understood.

The Motion will be denied.

Further in camera examination was pursued at the commencement of the trial when the trial court again ruled:

THE COURT: It is the ruling of the Court that the motion to suppress is, in all respects, denied. I think and I so find that the Defendant was adequately advised of his [c]onstitutional rights and that he knowingly waived those rights.

I further find that the statements made to the nurse were made in the Jail and within a reasonable time after the cautioning[ ] by the detective of the De-

---

**2.** Photographs of the rafter area where Dice was found by the arresting officers tend to demonstrate that a considerable degree of agility was required to ascend and crawl into the ceiling-height confined location. The jury probably considered whether an extremely intoxicated person could ever have been able to climb upward and get into that space. Judging from the photograph, most persons might have trouble doing so when completely sober.

fendant's [c]onstitutional rights; that he should have been well aware of, at that time, of the consequences of discussing this matter with the nurse.

A further effort was made to preclude introduction of the jailhouse statement during trial. The objection was again overruled.

■ Suppression or admission of a confession when based on conflicting evidence invokes a burden of the proof of voluntariness required of the prosecution and leaves the decision to be made factually by the trial court. *See Stone v. State,* 745 P.2d 1344 (Wyo.1987), which addressed the similar question of the defense of intoxication to render a confession involuntary.

■ A careful and comprehensive analysis of the decisional process for admission of a confession found to be voluntary was provided by this court in *Garcia v. State,* 777 P.2d 603, 605–06 (Wyo.1989), where we held:

> The State always has the burden of proving by a preponderance of the evidence that the confession was voluntary. * * *
>
> *  *  *  *  *  *
>
> The due process clause of the Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." The purpose of the clause is to exclude evidence that has been obtained in violation of the Constitution. Therefore, whenever the State obtains a confession it has the burden by a preponderance to demonstrate that the statement was not obtained in violation of the Miranda doctrine and that the statement was given voluntarily. *Colorado v. Connelly,* 479 U.S. 157, 163, 107 S.Ct. 515 [519], 93 L.Ed.2d 473 (1986). A confession is not voluntary if extracted by

threats or improper influences or promises. * * *

*  *  *  *  *  *

* * * [T]his court has applied a two-part test to determine if the waiver of the right to remain silent was made voluntarily, knowingly, and intelligently. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Secondly, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Frias v. State,* 722 P.2d [135] at 142 [ (Wyo.1986) ]. In determining whether the statement made by an accused is voluntary, the totality of the circumstances surrounding the interrogation must be examined. *Id.*[3]

We find no error in the denial of the suppression of either the comment or the statement within the facts and circumstances provided by this record. *Green v. State,* 784 P.2d 1360 (Wyo.1989); *Stone,* 745 P.2d 1344.

### E. *Cumulative Error*

This argument is resolved by the determination of contentions included in the prior issues presented for appeal. There is no cumulative error requiring reversal by this court. *Jennings v. State,* 806 P.2d 1299 (Wyo.1991); *Justice v. State,* 775 P.2d 1002 (Wyo.1989).

Affirmed.

---

**3.** By coincidence, the trial judge in Dice was also the district judge who was assigned to sit with the Wyoming Supreme Court on *Garcia,* 777 P.2d 603 and, as an assigned judge, authored the court's opinion.