719 So.2d 316 (1998)
Calvin Brian JOPPY, Appellant,
v.
STATE of Florida, Appellee.
No. 97-0187.
District Court of Appeal of Florida, First District.
August 7, 1998.
Rehearing Denied September 11, 1998.
*317 Nancy Daniels, Public Defender, and Michael A. Wasserman, Assistant Public Defender, Tallahassee, for Appellant.
Robert Butterworth, Attorney General, and Trina Kramer, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We sua sponte withdraw our previous opinion issued in this case and substitute the following opinion:
In this appeal from his judgment and sentence for burglary of a structure, Calvin Joppy argues that the trial court erred in denying his motion to suppress his verbal reply to a question by the arresting officer prior to Joppy receiving his Miranda[1] rights. Under the narrow circumstances in this case, we conclude that because the officer's question was based on an objectively reasonable concern for his safety and that of his fellow officers involved, Joppy's reply was admissible under the public safety exception established by the United States Supreme Court in New York v. Quarles.[2] Accordingly, we affirm.
At the hearing on Joppy's motion to suppress the statement at issue, the arresting officer was the only witness. Officer Rewis testified that while on patrol at 5:40 a.m., he heard an alarm going off at Buddy's Baja restaurant which was closed and upon looking into the dark building with his flashlight, he spotted a male in a striped shirt. Upon seeing the officer, the individual fled. Officer Rewis rushed to the west side of the building and observed evidence of forced entry and then went to the east side of the building where he observed the individual leaving the area behind the building while wearing black socks on his hands. The officer challenged the individual and physically arrested him. Officer Rewis testified that after handcuffing Joppy and being "overly concerned for officer safety," he asked Joppy if there was anyone else in the building, to which Joppy replied there was no one else. It is this statement by Joppy that he sought to suppress.
During the hearing and at trial, Officer Rewis identified Joppy in the courtroom as the same person he had arrested that night. Officer Rewis admitted at the suppression hearing that when he asked the question, he had not yet Mirandized Joppy, that there was no one else around at the time and that he did not take anything Joppy said to him at face value. The state argued that Joppy's statement was admissible under Quarles, supra, the public safety exception, because the questions were asked due to concern for officer safety. Defense counsel argued that Quarles and its progeny were not applicable because unlike those cases, the instant case involved no guns or highly volatile situations. The trial court took the motion under advisement.
At trial, the court overruled defense counsel's objections and permitted Officer Rewis to testify as to Joppy's statement that there was no one else in the building. Officer Rewis testified consistent with his previous testimony at the suppression hearing and gave additional testimony that when he arrested Joppy, he noticed Joppy had with him a gray money bag with cash in it, a carton and individual packs of cigarettes. Rewis and a backup officer both testified that upon patdown, it was discovered that Joppy had a running stopwatch, a screwdriver and a binocular in his pockets, and the backup officer also noticed black socks in Joppy's hands. *318 The other officer testified to receiving a backup call from Officer Rewis that Baja's alarm was going off, there was a broken window and a man wearing a striped shirt outside.
A restaurant manager testified that upon arriving at the scene, he noticed that the locked area where the cigarettes, cigarette money and liquor were stored, had been broken open and that cigarettes and cigarette money were missing. He identified the gray money bag as being the container used by the restaurant to store the cigarette money. The jury found Joppy guilty as charged. The trial court denied Joppy's motion for new trial, wherein he argued among other things, that the court erred in denying his motion to suppress.
It is undisputed that at the time of the question at issue by Officer Rewis and reply by Joppy, he was handcuffed and had not been given Miranda warnings. Therefore, the threshold issue is whether an officer's question, based on concern for his safety and that of the other officers involved, can satisfy the narrow public safety exception to Miranda established in Quarles, apparently an issue of first impression for state courts in Florida. It was also undisputed that no members of the public appeared to be in the area at the time Officer Rewis apprehended Joppy, but we recognize that the Supreme Court has clearly included considerations of police safety within the purview of the public safety exception:
We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.
Quarles, 467 U.S. 649, 658-59,104 S.Ct. 2626, 81 L.Ed.2d 550 (Emphasis added).
Appellant argues that the cases cited by the state in which the public safety exception has been held to apply are distinguishable from the instant case in that they involved some factor not present in the instant case, such as an immediate threat of or use of a weapon by the suspect, see, e.g., Fleming v. Collins, 954 F.2d 1109 (5th Cir.1992) (officer approached robbery suspect and asked where his gun was and whether he was alone); U.S. v. Padilla, 819 F.2d 952 (10th Cir.1987) (after having seen defendant waiving a gun and observing bullet holes in the window, the officer asked the defendant if anyone was inside); Quarles, supra (after observing that defendant was wearing an empty shoulder holster, one officer asked him where the gun was), or an immediate threat to the life of the suspect. See Benson v. State, 698 So.2d 333 (Fla. 4th DCA 1997) (after having observed the defendant dumping something in his mouth at the time of the drug bust, one officer asked him how many cocaine rocks he had swallowed). Although those factors certainly aid in determining the reasonableness of the perceived threat to safety, they are not exclusive.
In People v. Askew, 220 A.D.2d 811, 632 N.Y.S.2d 287 (N.Y.App.Div.1995), after a police officer discovered a burglary suspect behind a refrigerator in a dark, closed restaurant, the officer asked the defendant whether anyone else was in the building. Although not specifically citing to Quarles, the court held that the defendant's response that he was by himself was not subject to suppression, since the officer's question was clearly prompted by concern for his own safety and that of his fellow officers. Similarly, in Dice v. State, 825 P.2d 379 (Wyo.1992), after a police officer noticed a broken window at a closed bar at approximately 3:00 a.m., investigated and found the defendant hiding inside, the officer placed the defendant under arrest and without having read him his rights, asked him if there was anyone else in the building. The court held that the defendant's reply in the negative was properly admitted at trial under the Quarles exception because the officer had asked the question out of concern for the potential threat to her safety and that of others at the scene.
The facts in this case, like Dice and Askew, reveal an objective and immediate threat of a potential danger to the safety of that officer and his fellow officers from someone else inside the dark building, and therefore satisfy the standard for applying the exception to Miranda set forth in Quarles. Just as in Quarles, the record in the instant case further demonstrates that the question at issue *319 was asked just after appellant was handcuffed, while the possibility of a threat to the safety of that officer and that of the backup officers had not yet been eliminated.
We reject appellant's argument that Officer Rewis' statement, on cross-examination at the suppression hearing, that he took nothing appellant said "at face value" implies that the officer merely intended to elicit testimonial evidence. The officer's testimony immediately preceding and following the "face value" statement clearly demonstrates his legitimate concern for his and his fellow officers' safety. He stated, among other things, that if Joppy had told him there was someone else in the building it would have affected his actions. He would have directed the other officers to check inside the building. In our view, Officer Rewis' statement that he would not accept at "face value" anything Joppy told him was only a reflection of the everyday caution with which police officers would generally regard statements made to them by one suspected of criminal activity. Our decision is consistent with the following statement of the United States Supreme Court in its Quarles decision:
We decline to place officers ... in the untenable position of having to consider, often in a matter of seconds, whether it best served society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to obtain that evidence and neutralize the volatile situation confronting them.
467 U.S. 649, 657-58, 104 S.Ct. 2626, 81 L.Ed.2d 550. We thus decline to adopt a test that would make application of the officer safety exception of Quarles dependent upon an inquiry into the officer's opinion as to the credibility of the suspect. If the circumstances disclose "an objectively reasonable need to protect the police or the public from immediate danger,"[3] an officer should not be deterred from making immediate inquiry by taking time to ponder the question of his own belief as to whether or not the suspect will give a truthful answer.
In any event, the Supreme Court held in Quarles that the availability of the public safety exception does not depend on the motivation of the individual officers involved. See Quarles, 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550. The Court acknowledged that most police officers, in apprehending a suspect, would act for many different reasons, including protection of the public, protection of themselves, and the desire to obtain incriminating evidence from the suspect. See Id. The Court further explained that

[w]hatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety.
Id. (emphasis added). The basis for the exception in Quarles is that the need for answers to questions in situations posing a threat to the safety of the public, or to the police such as in the instant case, outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against selfincrimination.
We note that in light of the wealth of virtually undisputed evidence against Joppy, even had his statement that there was no one else inside been suppressed, there is no likelihood that the jury would have exonerated him. Therefore, even were we to conclude that it was error to admit Joppy's statement, such an error was harmless. Stein v. State, 632 So.2d 1361, 1365 (Fla.1994); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
AFFIRMED.
ERVIN and ALLEN, JJ., and SMITH, LARRY G., Senior Judge, concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).
[3] United States v. Carrillo, 16 F.3d 1046 (9th Cir.1994).