**Dawn Rene WITT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 94–69.**

Supreme Court of Wyoming.

March 22, 1995.

---

Leonard D. Munker, State Public Defender, Deb Cornia, Appellate Counsel, and Tim Newcomb of Grant & Newcomb, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., D. Michael Pauling and Mary Beth Wolff, Senior Asst. Attys. Gen., Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Dawn Witt (Witt), who alleged she was a battered woman and acted in self-defense when she shot and killed her boyfriend, appeals her voluntary manslaughter conviction. Concerning the battered woman syndrome, she contends the district court erred by excluding expert testimony on her state of mind at the time of the shooting and failed to properly instruct the jury on the syndrome. She additionally challenges certain evidentiary rulings of the district court and its failure to instruct the jury that it must disregard her statements to law officials if it deems those statements involuntary. Lastly, she challenges the failure of Justice Thomas to recuse himself from consideration of this appeal.

We find no reversible error and affirm.

## ISSUES

Witt presents the following issues for our review:

I: Does the Battered Woman Syndrome defense provide an accused the right to have expert testimony as to the accused's state of mind?

II: Did the court violate the accused's federal and state rights to cross-examine a D.C.I. agent by prohibiting specific reference to the agent's interrogation manual?

III: Did the court violate Ms. Witt's federal and state rights to remain silent by submitting her statements to the jury?

IV: Did the court violate Ms. Witt's federal and state rights to remain silent by not instructing the jury to disregard her statements if they found them involuntary?

V: Did the court violate Ms. Witt's federal and state rights to due process by refusing to give Defense Instructions #'s 6, 7, 8, & 11?

VI: If Justice Thomas fails to recuse himself under Defendant's Motion to Recuse Justice Thomas for Partiality under Wyoming Code of Judicial Conduct Canon 3 E(1), does that failure violate Ms. Witt's federal and state rights to a neutral and impartial tribunal?

## FACTS

Witt and her boyfriend, Mark Ayers (Ayers), lived together in Chugwater, Wyoming, for approximately two years. Testimony was presented at trial that Ayers had psychologically and physically abused Witt over the course of their relationship, and three experts testified that Witt was a battered woman.

In the early evening of May 28, 1993, Witt shot Ayers in the chest, killing him. Immediately after she shot Ayers, she called 911 for assistance. Emergency help arrived, and she was taken to her grandparents' Chugwater home, until an initial investigation could be completed. At approximately 6:30 p.m., Deputy Sisson picked up Witt from her

grandparents' home and took her to the Platte County Sheriff's Office in Wheatland, Wyoming, for questioning. During the trip to Wheatland, Witt was advised of her *Miranda* rights, and in response to her question of whether she was going to jail, Deputy Sisson informed her it depended upon the investigation's outcome and upon her cooperation in the investigation.

Deputy Sisson remained with Witt at the Sheriff's Office until 10:30 p.m. Witt was advised that she could go home for the night and return in the morning, but she declined the offer. She testified she was kept in an office with the blinds drawn and was not permitted to communicate with her mother when her mother arrived at the office. Department of Criminal Investigation (DCI) Special Investigator Callaghan (Callaghan) arrived around midnight and again advised Witt they could postpone questioning until the morning. She responded that she was prepared to speak with Callaghan and did not wish to wait until morning.

During questioning by Callaghan, Witt related several versions of the shooting but settled upon the following version which Callaghan recorded after advising Witt of her *Miranda* rights. Witt explained that she and Ayers had been arguing for three days before the shooting, over an incident involving his truck. She indicated that shortly before the shooting, she had reached an agreement with him that they would stop fighting, but when her boss stopped by the house that evening, Ayers became angry again. Witt then stated:

> And, anyways, my boss left and Mark and me were sort of playing around, ... and I looked out the door and there was a porcupine out there, so he told me to go get the gun from the bedroom. Well I went back there and when I was back there it just was the way he had been making me feel all day and all through the two years of the relationship we've been together. I finally had enough[.] I couldn't take anymore so I fired a shot and I think it went into the closet[.] I thought I saw the shirts move in the closet. And that was kind of to get Mark back there. I started to walk around the bed and I

unloaded the chamber and put another bullet in and I fired the gun again. I did not mean to kill him, I was wanting to hurt him, to hurt him as bad as he was hurting me. Uh, it was—wasn't [sic] premeditated.

Witt was arrested and charged with second degree murder, and trial was held December 6 through 13, 1993. At the trial, she related a slightly different version of the shooting:

> A. On the night of May 28, 1993, myself, and my boyfriend, Mark Ayers, had been fighting for approximately three days, an incident where I had left his truck abandoned. I had to go [to] Wheatland that afternoon, and I bought him a Teddy bear and balloon from the Posey Patch in Wheatland. I came home and had given the Teddy bear to him, and he threw it and said that I just wasn't worth his time any more.
>
> I got real depressed, an[d] I went back in the bedroom to get the gun. I was going to kill myself, and I remember picking up the gun, and I was stabbing the trigger to see how much force it would take, and the gun went off; and I knew that it had gone into the closet because I had seen some of the shirts moving.
>
> Then I heard Mark yelling in the living room, and I got scared. Last time that I had put a hole in the wall, and he had hit me, and I knew he would hurt me again; so I reloaded the gun.
>
> When he came through the door, I pulled the trigger. It struck him in the chest, and I remember reloading the gun. I thought if he wasn't dead he was going to hurt me. Then I seen him laying on the floor. I dropped the gun. I went over to his side. I wasn't there but a few seconds, and then I went and called 911.

The jury returned a verdict finding Witt guilty of voluntary manslaughter, and this appeal followed. The facts relevant to specific issues will be set forth in the discussion of those issues.

## DISCUSSION

### 1. *Expert Testimony*

At trial, Witt presented three experts who testified on the battered woman syndrome.

The trial testimony explaining the battered woman syndrome can be summarized as follows: A battered woman is one whose marital or live-in partner has inflicted upon her repeated and deliberate physical and psychological injury. Types of abuse can include physical abuse, humiliation, denial of power, name calling, sexual abuse, threats of violence, and deprivation of food, sleep, heat, shelter and/or money. A battered woman eventually reaches a state of "learned helplessness"; her efforts to improve the relationship or extract herself from the situation prove futile, she learns she cannot escape the relationship because of her financial status or fear of retribution, and she abandons her efforts.

In addition to the "learned helplessness," a "cycle of violence" develops in an abusive relationship. The cycle of violence consists of three stages: a tension building stage in which the battered woman attempts to appease the batterer and prevent the abuse, the violent stage in which the abuse actually occurs, and the honeymoon stage in which the batterer apologizes and pleads for forgiveness, giving the battered woman hope the abuse will end.

In addition to permitting the testimony generally explaining the battered woman syndrome, the district court permitted expert testimony upon the specific symptoms of the syndrome exhibited by Witt, and each expert provided a diagnosis of her as suffering from the syndrome at the time of the shooting. However, the district court granted the state's motion in limine and excluded expert testimony on the issue of Witt's state of mind at the time of the shooting.

In her first claim of error, Witt contends the district court erroneously interpreted WYO.STAT. § 6–1–203 (Cum.Supp.1994) and abused its discretion in excluding the expert testimony on her state of mind at the moment she shot Ayers. WYO.STAT. § 6–1–203 provides:

(a) The "battered woman syndrome" is defined as a subset under the diagnosis of Post–Traumatic Stress Disorder established in the Diagnostic and Statistical Manual of Mental Disorders III—Revised of the American Psychiatric Association.

(b) If a person is charged with a crime involving the use of force against another, and the person raises the affirmative defense of self-defense, the person may introduce expert testimony that the person suffered from the syndrome, to establish the necessary requisite belief of an imminent danger of death or great bodily harm as an element of the affirmative defense, to justify the person's use of force.

■ Witt correctly observes that whether WYO.STAT. § 6–1–203 permits expert testimony on the ultimate issue of the accused's state of mind at the time of the crime's commission is a question of law. On appeal, this Court reviews questions of law *de novo*, and if the district court's conclusion is in accordance with law, it is affirmed. *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n*, 845 P.2d 1040, 1042 (Wyo.1993).

■ However, in the absence of statutory authority mandating admission of the expert testimony, the district court's decision to admit or reject such testimony is an evidentiary ruling committed to its discretion. *Price v. State*, 807 P.2d 909, 913 (Wyo.1991). We will not disturb a trial court's evidentiary rulings on appeal absent a clear abuse of that discretion. *Trujillo v. State*, 880 P.2d 575, 580 (Wyo.1994).

We must therefore determine first whether WYO.STAT. § 6–1–203 permits expert testimony on the accused's state of mind at the time the crime is committed. If WYO.STAT. § 6–1–203 does not permit such testimony, we must then review the district court's decision under the applicable rules of evidence to determine whether it abused its discretion in excluding the testimony. ·

■ In construing a statute, "the initial step in arriving at a correct interpretation ... is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker Land & Cattle Co.*, 845 P.2d at 1042 (*quoting Rasmussen v. Baker*, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). If the statute's language is clear and unambiguous, we apply its plain meaning and need not consult the numerous rules of statutory con-

struction. *Houghton v. Franscell,* 870 P.2d 1050, 1054 (Wyo.1994); *Parker Land & Cattle Co.,* 845 P.2d at 1043.

We conclude the plain language of WYO.STAT. § 6–1–203 does not permit expert testimony on the ultimate issue of the accused's state of mind at the time the crime was committed. To interpret the statute as Witt urges would require this Court to ignore the language immediately following and modifying "expert testimony." The statute provides that the accused may introduce "expert testimony *that the person suffered from the syndrome.*" WYO.STAT. § 6–1–203(b) (emphasis added). The provision's plain meaning permits the accused to present, in support of her claim that she believed she was in imminent danger of death or great bodily harm, expert testimony that she suffered from the syndrome. The statute does not permit the expert to testify that the accused did indeed believe she was in imminent danger of death or great bodily harm. We uphold the district court's determination that WYO.STAT. § 6–1–203 does not permit expert testimony on the accused's state of mind at the time of the crime's commission.

We next consider whether the district court abused its discretion in excluding the expert testimony based upon its determination that the testimony would not aid the trier of fact. W.R.E. 704 permits the admission of expert testimony even if it "embraces an ultimate issue to be decided by the trier of fact." However, to be admissible, expert testimony must be helpful to the trier of fact. W.R.E. 703.

Expert testimony explaining the battered woman syndrome and establishing that the accused suffered from the syndrome would be helpful to a jury in evaluating the accused's perception of imminent danger of death or great bodily harm and in determining whether that belief was reasonable. "The confrontational nature of an incident where a battered woman kills her abuser might only become apparent when viewed in the context of a pattern of violent behavior rather than as an isolated incident." *State v. Richardson,* 189 Wis.2d 418, 525 N.W.2d 378, 382 (App.1994).

Testimony on the accused's state of mind at the time of the violent act, however, would not be helpful to the jury. An expert has no basis for evaluating the accused's state of mind when she committed the crime, and such testimony would usurp the function of the jury. Testimony on the accused's state of mind at the time of the crime would constitute an opinion on the accused's credibility and guilt because it would be a comment upon what the accused actually believed. This Court has held that an expert may not testify about the veracity of an accused's version because "it assumes the function of the jury." *Price,* 807 P.2d at 916 (*quoting Smith v. State,* 564 P.2d 1194, 1200 (Wyo.1977)).

In this regard, we agree with the reasoning expressed by the Court of Appeals of Wisconsin:

The reason for allowing expert testimony about battered woman's syndrome is to assist the jury in an area where its knowledge may be mistaken but where the expert has special knowledge. The expert in battered woman's syndrome does not have special knowledge about the battered woman's state of mind during a homicidal act any more than the lay jurors. That a battered woman may exhibit certain characteristics from the psychological and physical abuse of battering is something that can be made known to the jury through the use of an expert witness. However, knowing those characteristics does not give the expert any special advantage in helping a jury determine whether the abuse cycle has escalated at the time of the homicidal act to a point at which the battered woman is in fear of imminent danger.

Here, the expert's area of special knowledge is the battered woman's syndrome and whether [the accused's] personal characteristics are comparable; the expert is in no position, however, to comment upon [the accused's] state of mind during the [violent act]. The expert was not there and science has not yet produced the technology which allows experts to put themselves inside the person's head at the time an event took place. Thus, the expert's

conclusions about the reasonableness of [the accused's] beliefs would usurp the jury's function rather than assist it.

*Richardson,* 525 N.W.2d at 383 (citations omitted). *See also People v. Wilson,* 194 Mich.App. 599, 487 N.W.2d 822, 825 (1992); *Bechtel v. State,* 840 P.2d 1, 9 (Okla.Crim. App.1992).

We hold that WYO.STAT. § 6–1–203 does not permit expert testimony on the accused's state of mind at the time of the violent act, and the district court did not abuse its discretion in excluding such testimony as unhelpful to the trier of fact.

## 2. *Cross–Examination on DCI Agent's Interrogation Manual*

■ In her second claim of error, Witt challenges the district court's denial of her cross-examination on DCI Special Investigator Callaghan's use of an interrogation manual, *The Reid Technique of Specialized Interrogation Strategies.* She contends Callaghan's use of the manual was relevant to the question of her confession's voluntariness.

The district court permitted defense counsel to question Callaghan concerning the methods she employed in her interrogation of Witt. However, after Callaghan testified that she did not recall the techniques outlined in the manual and did not employ a particular interrogation technique when questioning Witt, the district court ruled that no foundation existed for further questioning concerning the manual.

As we noted earlier, evidentiary rulings are committed to the district court's discretion and will not be disturbed on appeal absent a clear abuse of that discretion. *Trujillo,* 880 P.2d at 580. Defense counsel failed to establish that Callaghan relied upon the interrogation manual in questioning Witt, and we thus cannot find unreasonable the district court's determination that no foundation existed for continued questioning on the manual.

## 3. *Voluntariness of Witt's Confession*

In her third claim of error, Witt challenges the voluntariness of her confession and contends the district court erred in denying her motion to suppress the statements she made to Special Investigator Callaghan. She alleges her confession was induced by a deputy's statement that the length of her stay in jail depended upon her cooperation in the investigation. Witt additionally challenges her confession's voluntariness on grounds that she was not permitted to communicate with her family and was interrogated by a government agent trained in "stealth interrogation" while she was suffering from sleep deprivation and the stress of her boyfriend's death.

■ In evaluating the voluntariness of an accused's statements, we must examine the totality of the circumstances surrounding the interrogation. *Vigil v. State,* 859 P.2d 659, 664 (Wyo.1993); *Burk v. State,* 848 P.2d 225, 233 (Wyo.1993). Statements are made voluntarily if they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Vigil,* 859 P.2d at 664 (quoting *Frias v. State,* 722 P.2d 135, 142 (Wyo.1986)). "Mere emotionalism and confusion do not necessarily invalidate a statement or confession." *Black v. State,* 820 P.2d 969, 975 n. 4 (Wyo.1991) (*citing Corn v. Zant,* 708 F.2d 549, 567 (11th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984), *vacated on other grounds,* 772 F.2d 681 (11th Cir.1985)). Lastly, statements by the police to the effect that it would probably go easier for the accused if she cooperated have been declared innocent and constitutionally acceptable. *Black,* 820 P.2d at 976 (*citing United States v. Leon Guerrero,* 847 F.2d 1363, 1366–67 (9th Cir.1988); *Hawkins v. Lynaugh,* 844 F.2d 1132, 1139–41 (5th Cir.1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 247, 102 L.Ed.2d 236 (1988); *United States v. Pelton,* 835 F.2d 1067, 1072–73 (4th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Guarno,* 819 F.2d 28, 31 (2nd Cir. 1987); *Beasley v. United States,* 512 A.2d 1007, 1015–16 (D.C.App.1986), *cert. denied,* 482 U.S. 907, 107 S.Ct. 2485, 96 L.Ed.2d 377 (1987); *State v. Robertson,* 219 Neb. 782, 366 N.W.2d 429, 433 (1985)).

■ In opposition to a motion to suppress alleged involuntary statements, the prosecution must convince the trial judge by a preponderance of the evidence that the

confession was voluntary. *Dodge v. State,* 562 P.2d 303, 308 (Wyo.1977). This Court will uphold a district court's factual determinations on a motion to suppress unless we find them clearly erroneous. *Wilson v. State,* 874 P.2d 215, 218 (Wyo.1994).

> Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's determination.

*Wilson,* 874 P.2d at 218 (*citing United States v. Werking,* 915 F.2d 1404, 1406 (10th Cir. 1990)).

■ The record does establish, as Witt contends, that Deputy Sisson informed her the length of her stay in jail depended upon the investigation's outcome and her cooperation in that investigation. The record also confirms that Witt was detained for close to six hours before Special Investigator Callaghan arrived and began her interrogation of Witt, and during that time Witt was emotional, experienced difficulty staying awake and was not permitted contact with her family.

The record also discloses, however, that Witt was twice advised of her *Miranda* rights: initially during her trip from Chugwater to the Platte County Sheriff's Office and a second time just before she provided her taped statement to Callaghan. Additionally, she was twice asked, once at 10:30 p.m. before Callaghan arrived and once around midnight by Callaghan before she began questioning Witt, whether Witt would prefer to go home and return in the morning for questioning. Witt declined both invitations.

The district court had the opportunity to consider the totality of the circumstances outlined above and the demeanor of the witnesses in presenting the evidence. Upon review of the record, viewing it in the light most favorable to the district court's determination, we cannot conclude that the finding of voluntariness was clearly erroneous. The district court did not err in admitting Witt's statements.

### 4. *Jury Instruction on Voluntariness*

In her fourth claim of error, Witt contends the district court erred when it instructed the jury on the law of voluntariness as follows:

> An individual may chose [sic] to make statements to police officers of certain facts concerning an incident and such statements may be considered by you as evidence. You determine whether you consider such statements and how much weight you give them. If you do consider them, you must consider the totality of the circumstances under which the statements were elicited, including the conduct of the police and the voluntariness or involuntariness of the statements. Whether you consider any statement made by the defendant to law enforcement, and how much weight you give such a statement, is for you to decide.

Witt contends this instruction misstates the law, that the jury should have been instructed that it must disregard Witt's statements if it determines those statements were not voluntary. We agree that this instruction is deficient, but conclude the error was harmless.

■ All states employ one of two procedures in determining a confession's voluntariness, the orthodox rule or the Massachusetts rule. DAVID M. NISSMAN ET AL., *Law of Confessions* § 11:1 at 302–04 (1985). Under the orthodox rule, the judge hears all the evidence concerning a confession outside the presence of the jury. If the judge finds the confession is voluntary, the confession is submitted to the jury for the purpose of deciding what weight or credibility to give the confession. *Id.* at 301. The Massachusetts rule differs from the orthodox rule only in that, after the judge's *in camera* determination of voluntariness, the question of a confession's voluntariness, as well as the weight or credibility of the confession, is presented to the jury and it is instructed to disregard the confession if it finds it involuntary. *Id.* at 301. Wyoming follows the Massachusetts rule requiring submission of the confession and the surrounding circumstances to the jury for its determination of the confession's voluntariness. *Dodge,* 562 P.2d at 309–10;

*Richmond v. State*, 554 P.2d 1217, 1225 (Wyo.1976); *Lonquest v. State*, 495 P.2d 575, 580–81 (Wyo.1972), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); *Clay v. State*, 15 Wyo. 42, 59, 86 P. 17 (1906).

 The instruction given by the district court did not inform the jury that it must first consider the claim by Witt that the confession was involuntary and then to disregard the statement if it found it to be involuntary. Only after determining the statement to be voluntary can the jury consider a statement made by the defendant to law enforcement officers, and determine the weight to be given the statement. This approach would comport with the law of Wyoming which requires the jury to independently pass on the question of voluntariness. Even finding fault with the instruction as given, we do not adopt Witt's contention that the failure to properly instruct the jury violated her due process right to a fair hearing on voluntariness.

The United States Supreme Court has held that an accused is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of a confession are actually and reliably determined. *Jackson v. Denno*, 378 U.S. 368, 380, 84 S.Ct. 1774, 1782, 12 L.Ed.2d 908 (1964). In so ruling, the United States Supreme Court declared unconstitutional the New York procedure under which the trial judge made only a preliminary determination whether the confession could under no circumstances be deemed voluntary. Absent such a finding, if the evidence presented a fair question as to the confession's voluntariness, the New York rule required the question of voluntariness to be presented to the jury for resolution. *Jackson*, 378 U.S. at 377, 84 S.Ct. at 1780. The United States Supreme Court found this procedure unreliable and constitutionally deficient because the

> jury is at once given both the evidence going to voluntariness and all of the corroborating evidence showing that the confession is true and that the defendant committed the crime. The jury may therefore believe the confession and believe that the defendant has committed the very act with which he is charged, a circumstance which

may seriously distort judgment of the credibility of the accused and assessment of the testimony concerning the critical facts surrounding his confession.

*Jackson*, 378 U.S. at 381, 84 S.Ct. at 1783.

 Following its holding in *Jackson*, the United States Supreme Court remanded for a hearing upon voluntariness before a judge. *Id.* at 394, 84 S.Ct. at 1790. The United States Supreme Court did not require a new jury trial unless, following the voluntariness hearing, the trial court determined the confession to be involuntary. *Id.* Due process requires an *in camera* judicial determination of voluntariness; *Jackson* did not hold that due process requires a jury to also pass on the question of voluntariness. *Id.* at 395, 84 S.Ct. at 1790.

 Because the constitutionally mandated portion of Wyoming's procedure is the trial judge's *in camera* determination of voluntariness, not the jury's determination, we need not, in reviewing the error, apply the constitutional harmless error analysis requiring our determination that the error was harmless beyond a reasonable doubt. *Ramos v. State*, 806 P.2d 822, 829 (Wyo.1991). We instead apply the harmless error analysis set forth in W.R.A.P. 9.04 which this Court has held requires Witt to prove a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to her. *Miller v. State*, 755 P.2d 855, 862 (Wyo.1988).

Witt failed to demonstrate that a reasonable possibility exists that the verdict would have been different if the jury had been instructed that it must disregard the confession if it determines it to be involuntary, instead of receiving the instruction that whether it considers the confession and the weight it gives the confession are for its determination. In the absence of such a showing, we find no reversible error.

### 5. *Defense Theory of the Case Instructions*

In her fifth claim of error, Witt contends the district court violated her due process right to present her theory of the case when it denied her requested jury instructions

numbers 6, 7, 8 and 11.[1] Her proposed jury instructions numbers 6 and 8 were similar and would have informed the jury that Wyo. Stat. § 6-1-203 permits the introduction of expert testimony relating to the battered woman syndrome when the accused raised the affirmative defense of self-defense.[2]

Her proposed jury instruction number 7 would have informed the jury that the state must prove beyond a reasonable doubt that she did not act in self-defense.[3]

A defendant has the right to have instructions on her theory of the case presented to the jury if the proposed instructions sufficiently inform the jury of the theory or defense and if competent evidence ex-

ists supporting the law expressed in the instructions. *Amin v. State*, 811 P.2d 255, 261 (Wyo.1991). The district court may, however, properly refuse a requested instruction, even if correct, where other instructions have sufficiently covered the principles of the requested instruction. *Oien v. State*, 797 P.2d 544, 547 (Wyo.1990). It is within the trial court's discretion to present its own instruction on the defendant's theory of the case or defense. *Sanchez v. State*, 694 P.2d 726, 729 (Wyo.1985). Upon review of the district court's instructions to the jury, we conclude the district court adequately instructed the jury on Witt's theory of the case.

Witt alleged, as her theory of the case, that she acted in self-defense when she

1. Proposed jury instruction number 11 would have instructed the jury to disregard Witt's statements if it determined them to be involuntary. She presents no new argument, under this claim of error, on the failure to properly instruct the jury on voluntariness, and we thus rely upon our earlier discussion of the issue and add nothing further.

2. Witt's proposed jury instruction number 6 provided:

 Wyoming Statute § 6-1-203 provides for the introduction of expert testimony relating to the battered woman syndrome in certain cases. When a person is charged with a crime involving the use of force against another, and the person raises the affirmative defense of self-defense, the person may introduce expert testimony that the person suffered from battered woman syndrome.

 The expert testimony aids the jury in considering whether the defendant actually believed she was in danger of death or serious bodily harm. The expert testimony also aides the jury when considering whether the defendant's belief was reasonable. The testimony may assist the jury in determining whether, under similar circumstances, a reasonable person would have believed there was imminent danger to her life.

 Witt's proposed jury instruction number 8 provided:

 The 52nd Legislature of the state of Wyoming at it's [sic] 1993 general session created Wyoming Statute 6-1-203 relating to crimes and offenses and provided for the introduction of expert testimony relating to the battered woman syndrome. This act became effective February 22, 1993.

 6-1-203 Battered Woman Syndrome provides as follows:

 (b) If a person is charged with a crime involving the use of force against another, and the person raises the affirmative defense of

 self-defense, the person may introduce expert testimony that the person suffered from the syndrome, to establish the necessary requisite belief of an imminent danger of death or great bodily harm as an element of the affirmative defense, to justify the person's use of force.

 Section 2. This act shall apply to all actions pending on or after the effective day of this act. This statute provides[,] beginning February 22, 1993, and at all times thereafter that in all actions in the courts of this state a defendant may offer evidence of domestic abuse in the form referred to by the Legislature as battered woman syndrome. The testimony of expert witnesses concerning the effects of such domestic abuse or the belief and perception of the person being abused is admissible pursuant to 6-1-203. The Legislature has determined that expert's statements made pursuant to this statute to be relevant as evidence and admissible.

 W.S. 6-1-203 acts as a statutory pronouncement admitting expert testimony regarding spousal abuse and the battered woman syndrome. The appropriate standards to be applied subjectively and objectively are whether a reasonable person would believe and recognize the threat under all of the circumstances and would therefore act in self-defense. The defendant must necessarily believe that such force is immediately necessary for protecting one's self against the unlawful abuse by the other person.

3. Witt's proposed instruction number 7 provided:

 The State is required to prove beyond a reasonable doubt that the self-defense claim does not accord with the facts. If the evidence, including the battered woman syndrome pursuant to W.S. 6-1-203, raises a reasonable doubt as to the defendant's guilt, she is entitled to be found not guilty.

shot and killed her boyfriend. Jury instruction number 18 informed the jury of her self-defense claim and of her claim that she acted in self-defense after she had been subjected to mental and physical abuse over the course of her relationship with Ayers. Jury instructions 14 through 16 instructed the jury on the law of self-defense, including the state's burden of proving that she did not act in self-defense. The district court also adequately instructed the jury on the presumption of innocence and the burden of proof. Jury instructions numbers 3 and 11 informed the jury that the state carries the burden of proving the accused guilty, that that burden never shifts and that, after consideration of all the evidence, the jury must find all elements of the charged crime proved beyond a reasonable doubt.

WYO.STAT. § 6–1–203 does not create a separate defense; it permits the introduction of expert testimony on the battered woman syndrome when the affirmative defense of self-defense is raised. Witt was permitted to introduce such testimony, and jury instruction number 18 informed the jury of her contention that she reasonably believed she was in danger because she suffered from battered woman syndrome. Her requested jury instructions informing the jury that WYO.STAT. § 6–1–203 permits expert testimony would not have provided any additional assistance to the jury in determining whether she acted in self-defense, and the district court did not abuse its discretion in rejecting those instructions.

### 6. *Recusal of Justice Thomas*

In her final claim of error, Witt contends that Justice Thomas' failure to recuse himself from consideration of this appeal violated her right to a neutral and impartial tribunal. This Court reviewed her argument in her previously filed motion to recuse Justice Thomas and, after full consideration, denied the motion. She presents no new or additional arguments on appeal, and we find no reason to deviate from our previous order denying the motion to recuse.

## CONCLUSION

Having found no reversible error, we affirm the judgment and sentence of the district court.