Joseph J. VENA, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 95–304.

Supreme Court of Wyoming.

June 25, 1997

Sylvia Lee Hackl, State Public Defender, PDP; Peter H. Froelicher, Assistant Public Defender, argued, for Appellant.

William U. Hill, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jon Forwood, Special Assistant Attorney General; Mary Beth Wolff, Laramie County Deputy District Attorney, argued, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

The primary focus in this appeal, taken by Joseph J. Vena (Vena) from his convictions of conspiracy to commit first degree murder, in violation of WYO. STAT. § 6–1–303 (1988), and first degree murder, in violation of WYO. STAT. § 6–2–101 (Supp.1994), is upon the voluntariness of statements given to law enforcement officers in which Vena admitted his involvement in the charged crimes. Vena asserts that the trial court erred in its pretrial ruling that the statements were voluntary, and also in improperly instructing the jury on the issue of voluntariness of the statements. Additional assertions of error in Vena's brief and argument include the denial of access to the psychiatric evaluation of a codefendant; the failure of the trial court to apply the doctrine of merger to the sentences for accessory to first degree murder and conspiracy to commit that murder; the denial of a motion for a mistrial after violation of an order *in limine* entered by the trial court; and the failure to admit the entirety of Vena's written and recorded confession. Our study of this record and application of pertinent legal rules reveals that no reversible error was committed at Vena's trial. The Judgment and Sentence entered in the trial court is affirmed.

Six issues are set forth in the Brief of Appellant, filed on behalf of Vena:

I.   Were Vena's statements voluntary?

II.  Did the district court commit reversible error in denying Vena's motion to discover his codefendant's mental evaluation?

III. Should the district court have applied the doctrine of merger of sentences to Vena's convictions of accessory to murder and conspiracy to murder?

IV.  Did the district court commit a clear abuse of discretion when it denied Vena's motion for a mistrial?

V.   Was it reversible error for the district court not to admit Vena's entire recorded confession upon request by the defendant in accordance with the rule of completeness?

VI.  Did the district court err when it instructed the jury?

Only four issues are articulated in Brief of Appellee, the State of Wyoming:

I.   Whether Appellant's statements to law enforcement were voluntary and the jury was properly instructed on the issue of voluntariness.

II.  Whether the trial court properly denied Appellant's discovery request for Paul Brown's mental evaluation report.

III. Whether Appellant was properly sentenced to consecutive life sentences for first degree murder and conspiracy to commit first degree murder.

IV.  Whether the district court properly ruled on Appellant's motions for mistrial and for admission of the tape recorded confession.

In October of 1994, Vena owned and operated the Lincolnway Detail Center (Detail Center) in Cheyenne. When an agent from the Bureau of Alcohol Tobacco and Firearms (ATF) went to the Detail Center to order an accessory for his vehicle, Vena suggested to the agent that Paul Brown (Brown), one of Vena's employees, could provide information about criminal activity in Cheyenne. Shortly after that another special agent of the ATF contacted Brown and hired him as an informant.

During the next several weeks, Brown supplied information concerning illicit firearm and narcotics activities in Cheyenne to the ATF. Between November 18, 1994 and November 21, 1994, Vena assisted Brown in making two controlled buys of narcotics for the ATF. Vena had worked extensively as an informant for several federal law enforcement agencies, including the Secret Service, the Federal Bureau of Investigation, the Internal Revenue Service, the United States Customs Service, and most frequently, the ATF. On November 28, 1994, Vena signed a confidential informant agreement with the ATF.

The victim was a transient who had been working at the Detail Center for Vena and using a back room at the Detail Center as his living quarters. During that month of November, the victim became aware of Brown's and Vena's work as informants for the ATF. Vena and Brown were concerned about the fact that the victim "knew too much" about their business, and they feared he might inform local narcotics and firearms dealers that Vena and Brown were working as informants. On the evening of November 28, 1994, Vena and Brown decided to kill the victim at the Detail Center.

Later that evening, Vena and Brown took a shotgun and some specially loaded shotgun shells and drove to the Detail Center. Vena waited in his office while Brown went to the back room. The victim was asleep in his sleeping bag on a cot in that room, and Brown shot him twice at close range with the shotgun, once in the chest and once in the head. Vena and Brown then took the victim's body, still in the sleeping bag, and loaded it into the trunk of the car which they had parked outside. They disposed of the body by leaving it along side the road near Nunn, Colorado.

Vena and Brown then returned to Cheyenne where they cleaned the back room of the Detail Center. Brown broke down the shotgun, and Vena and Brown concealed the shotgun parts, the left over special shells, and their bloody clothing in several places along Interstate 80 between Cheyenne and Laramie. The victim's body was found in a ditch outside of Nunn on November 30, 1994. Later on that day, two employees of the Wyoming Highway Department discovered bags of personal items and bloody clothes in two different trash barrels along Interstate 80 between Laramie and Cheyenne. Among the items found were identification cards belonging to the victim. The Wyoming Highway Patrol sent a teletype to authorities in Wyoming and Northern Colorado inquiring if a body had been discovered, and within an hour, they received a response from Weld County, Colorado, where the victim's body had been found.

Pursuing the investigation, Cheyenne police officers determined that the victim's last known residence was the back room of the Detail Center, and he was last seen there on November 28, 1994. Evidence of blood spatter was uncovered in that back room, and the officers determined that the sleeping bag in which the victim's body had been found had been his bedding. The officers also learned that Brown owned a shotgun and that Vena and Brown were seen together in a car, which Vena was driving, during the early morning hours of November 29, 1994. The officers examined the car, on December 3, 1994, and found evidence of blood in the trunk and passenger compartment. After being interviewed at the police station later that evening, Brown was arrested for the victim's murder.

The investigators then located Vena, and they advised him that Brown had been arrested as a suspect in a homicide. Vena insisted on first speaking privately with the ATF agent with whom he had been working. Vena denied shooting the victim, but he furnished the officers with a general outline of what had transpired on the evening of November 28, 1994. Vena voluntarily went with the officers to the police department where he was advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Vena continued to furnish further details in response to precise questions posed by the investigating officers. In an attempt to bolster his truthfulness, Vena directed the officers to various locations along Interstate 80 where he and Brown had disposed of parts of the shotgun and the remainder of the special shot shells.

The following day, December 4, 1994, Vena again was advised of his rights pursuant to the *Miranda* decision, and the interview by the officers continued. In the course of this interview, Vena admitted that he was involved with Brown in planning the victim's killing. After making this admission, Vena was arrested and charged with the victim's murder. Following a jury trial, Vena was found guilty on both charges, conspiracy to commit first degree murder and first degree murder. He was sentenced to consecutive life terms at the Wyoming State Penitentiary.

Vena's main claims of error relate to the voluntariness of statements he made to the ATF agent and the police officers with respect to the victim's murder. He contends that the inculpatory statements made to these officers on December 4, 1994 were not voluntary because he believed he was assisting the officers in his role as an ATF informant and the statements were induced by comments from the officers that "the only thing we're interested in * * * [is] who pulled the trigger." Vena argues that these comments implied that the sole target of their criminal investigation was the person who pulled the trigger, and therefore incorporated a reasonable assurance that his statements would not be used against him. He asserts reversible error by the district court in denying his motion to suppress the inculpatory statements arising after these assurances from the police officers, and further, that the court erroneously instructed the jury on the issue of voluntariness.

It is established firmly in Wyoming that the findings of the trial court on a motion to suppress a confession are binding unless clearly erroneous. This rule first was adopted in *Neilson v. State,* 599 P.2d 1326, 1330 (Wyo.1979), *cert. denied,* 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980). In *Wilson v. State,* 874 P.2d 215, 218 (Wyo. 1994), we summarized the justification for the rule:

> Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's determination.

This rule, as stated in *Wilson,* was followed in *Witt v. State,* 892 P.2d 132, 140 (Wyo. 1995).

██ Twenty five years ago, we adopted for Wyoming the standard that, in evaluating the voluntariness of statements by an accused person, we look to the totality of the circumstances surrounding the interrogation. *Jarrett v. State,* 500 P.2d 1027, 1030 (Wyo. 1972). Recently we summarized in *Kolb v. State,* 930 P.2d 1238, 1242–43 (Wyo.1996):

Denial of a motion to suppress is reviewed under an abuse of discretion standard. *Madrid v. State,* 910 P.2d 1340, 1344 (Wyo.1996). When the issue of voluntariness is raised in a suppression issue, the State must prove by a preponderance of the evidence that the confession was voluntary. *Id.; Miranda v. Arizona [Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1996)], 384 U.S. at 444–45, 86 S.Ct. at 1612. If the State cannot carry its burden, then evidence attained either directly or indirectly may not generally be used at trial. *Wong Sun [Wong Sun v. U.S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)], 371 U.S. at 485–86, 83 S.Ct. at 416. Because claims of involuntary confessions and *Miranda* violations are resolved after examination of the totality of the circumstances surrounding such claims, a review of all relevant facts is required. *Glass v. State,* 853 P.2d 972, 976 (Wyo.1993); *Schneckloth v. Busta-monte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); and *Thompson v. Keohane [Thompson v. Keohane,* —— U.S. ——, 116 S.Ct. 457, 464, 133 L.Ed.2d 383 (1995)], —— U.S. at ——, 116 S.Ct. at 464.

Statements are considered voluntary if they are "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986), *quoted with approval in Witt,* 892 P.2d at 139; *Vigil v. State,* 859 P.2d 659, 664 (Wyo.1993); *Rude v. State,* 851 P.2d 20, 23 (Wyo.1993); and *Frias v. State,* 722 P.2d 135, 142 (Wyo.1986). Emotionalism, confusion, and subjective perception do not necessarily invalidate a statement or confession. *Black v. State,* 820 P.2d 969, 975 n. 4 (Wyo.1991); *Witt,* 892 P.2d at 139; *Bravo v. State,* 897 P.2d 1303, 1305 (Wyo.1995); *Burk v. State,* 848 P.2d 225 (Wyo.1993); *Garcia v. State,* 777 P.2d 603 (Wyo.1989).

██ In this case, the record establishes that the officers advised Vena that "the only thing we're interested in * * * [is] who pulled the trigger." Our cases establish, however, that statements by the police suggesting that it would probably go easier for

the accused if the accused cooperates have been declared innocent and constitutionally accepted. *Witt*, 892 P.2d at 139. In analogous instances, belief as to a promise of non-prosecution; belief that the accused was considered a victim rather than a perpetrator; and belief that a girlfriend would be benefited by the statement have not been perceived as resulting in an involuntary admission. *Bravo*, 897 P.2d at 1305; *Burk*, 848 P.2d at 232; *Garcia*, 777 P.2d at 607. Vena was advised of his *Miranda* rights on two separate occasions before he admitted his participation in the victim's murder. The statement by the officers, upon which Vena relies, was made at a point in the interview after he already had admitted that he and Brown specifically had discussed the necessity of killing the victim and had planned, at least generally, the way that it would be done. At that juncture, the only information the police lacked was whether it was Brown or Vena who shot the victim.

The comments of the trial judge are perceptive and sound:

In his direct examination Vena was unable to give any cogent statement as to just when, where and by whom the alleged promises were made to him, except by way of affirmative responses to his counsels' suggestions that "[the police detective] and [the ATF agent]" were the people by whom and "the 3rd and 4th" as the times at which the assurances were given. * * *

On cross-examination Vena was very uncooperative and unable to give any coherent recitation of the critically important chronology and content of the conversations and interviews. When he was pressed, it was clear that counsel did not want the subject pursued.

In ruling upon the motion to suppress the court said this:

Vena is a 53–year–old man, long experienced in working with law enforcement in the course of investigative work and not likely to be duped by a ruse so primitive as a fake promise that he would not be prosecuted if he told about his involvement in a murder.

The totality of the circumstances and the preponderance of the evidence surrounding Vena's several statements show that he made these statements voluntarily. The police did not use implied promises of immunity to coerce Vena into making these statements in violation of his rights to due process. Accordingly, the motion to suppress these statements made on December 3, 4 and 5, 1994, will be denied.

The district court, in this case, had the requisite opportunity to consider the totality of the circumstances, which have been outlined previously, and the demeanor of the witnesses who presented the evidence. Upon review of the record, viewing the evidence in the light most favorable to the determination by the district court, we cannot conclude that its finding of voluntariness was erroneous. There was no abuse of discretion, and therefore no error in admitting Vena's statements into evidence.

Pursuing the issue of voluntariness, Vena contends that the district court committed error in its instruction to the jury on the law relating to the voluntariness of statements by the accused. The jury was instructed:

Statements made by the defendant to law enforcement officers may be considered by you only if you first determine that such statements were made voluntarily, in whole or in part. Statements are made voluntarily if they are the product of a free and deliberate choice rather than by intimidation or coercion, or in reliance upon an express or implied promise of special favor, leniency, or benefit. The fact that the defendant was advised of his constitutional rights, the conduct of the officers during the interview, the apparent intelligence of the defendant, his age and experience with the law enforcement are but a few of the factors you are to consider as part of the totality of the circumstances under which the statement was made. In making this determination you must view these factors as a reasonable person would view them.

If you find the statement is not voluntary, you must not consider it as evidence against the defendant. If you find it is

voluntary in whole or in part, you must consider only that part of the statement which you find to have been voluntary.

The submission of this issue to the jury was in accordance with the procedure that we have espoused. After the trial court makes its determination that a statement is to be received into evidence as voluntarily made, the defendant then has the right to have the question of the confession's voluntariness submitted to the jury for its independent determination. *Witt,* 892 P.2d at 140; *Dodge v. State,* 562 P.2d 303, 309–10 (Wyo.1977); *Garcia,* 777 P.2d at 607.

Vena argues that this instruction erroneously stated the law of voluntariness because the jury was required to view the totality of the circumstances underlying Vena's confession from the perspective of a reasonable person. Vena's contention is that the proper instruction would have advised the jury that it should examine the voluntariness of the confession in light of Vena's intelligence and other subjective factors. The instruction was essentially drawn from the Wyoming Criminal Pattern Jury Instructions § 6.12 (1996). It did inform the jury that it should consider Vena's intelligence, his age, and his experience with law enforcement officers when the jury was deciding whether the statements were voluntary. We hold that the instruction was an accurate statement of the law with respect to the voluntariness of Vena's admissions, and the court did not err in giving it.

█ In his second issue, Vena asserts that the district court erred when it denied him access to Brown's psychiatric evaluation that was prepared prior to Vena's trial. Vena sought the psychiatric evaluation pursuant to Wyo. R. Crim. P. 16, which provides in pertinent part:

(a) *Disclosure of evidence by state.*

1) Information Subject to Disclosure.

\* \* \* \* \* \*

(D) Reports of Examinations and Tests.—Upon written demand of a defendant, the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial.

█ In *Gale v. State,* 792 P.2d 570 (Wyo. 1990), we approved a trial process pursuant to which materials are to be examined in camera by the trial court, and a ruling then made without disclosure of the material to the accused. While we have addressed the standard of review only twice, and somewhat tangentially, we are satisfied that the standard of review is whether the trial court committed an abuse of discretion in refusing to order enforcement of a discovery order or disclose materials sought by the accused. The record discloses that the trial court did examine the psychiatric evaluation that Vena sought to obtain, and ordered that it be sealed and made a part of the record on review. The essence of the ruling of the court was that the report was not material.

The language of the discovery rule requires that when a request for such report is presented, like that made by Vena, the report of the examinations must be material to the preparation of the defense. In *Spencer v. State,* 925 P.2d 994, 998 (Wyo.1996), we quoted favorably language to the effect that evidence sought on discovery is material only if there is a reasonable probability that the outcome of the case would have been different. The requirement of materiality is tested by the court's inquiry as to whether the evidence which is sought is likely to affect the outcome of the trial. *Young v. State,* 849 P.2d 754, 763 (Wyo.1993). *Young* quoted from *Pote v. State,* 695 P.2d 617, 625 (Wyo. 1985), where we said:

[The] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed [or made available], and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means \* \* \*.

In *Roderick v. State*, 858 P.2d 538, 544 (Wyo. 1993), we stated the proposition that there is no duty of disclosure with respect to evidence that is only speculatively helpful to a defendant or merely exhibits a potential for leading to exculpatory material.

The trial court obviously was concerned about the language found in WYO. STAT. § 7–11–303(h) (1987) which reads:

> * * * No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any person in the course of the examination or treatment shall be admitted in evidence in any criminal proceeding then or thereafter pending on any issue other than that of the mental condition of the accused.

It is clear that Brown's psychiatric evaluation was conducted pursuant to the provisions of WYO. STAT. § 7–11–303. The trial court was obviously concerned about the privileged nature of the information. The claim that it might have been used to insure a more "thorough" investigation of Brown hardly seems sufficient to overcome that privilege. Further, Vena does not explain whether the information could have been obtained through other reasonably available means, in addition to the fact that Vena, a close associate of Brown's, might have been in an excellent position to be aware of Brown's background.

The thrust of the justification argued by Vena is that had he been given access to this evaluation, he would have been able to investigate Brown's background more thoroughly, or alternatively, he would have possessed evidence of Brown's history of hallucinations which could have either provided Brown with the motive to kill the victim, or could have been used to demonstrate that Brown lacked the requisite intent to commit first degree murder. It is in these respects that Vena contends the information was material to the preparation of his defense. With respect to the history of hallucinations, Vena assumes that the only relevant intent with respect to the murder was that of Brown. He overlooks the proposition that the jury could have found him guilty based upon his own intent, even though Brown may have lacked the requisite intent. In any event, the conten-

tion is purely speculative. The report itself refutes this latter contention, and the history of hallucinations is only speculatively helpful.

In *Roach v. State*, 901 P.2d 1135, 1137 (Wyo.1995), we held that it is inappropriate to attempt to circumvent statutory privileges by invoking the rules of discovery in criminal cases. There was no abuse of discretion on the part of the trial court in ruling that Vena could not obtain Brown's psychiatric evaluation. We hold that the trial court did not commit error in failing to order disclosure of the psychiatric evaluation.

■ Vena's third issue presents the proposition that the doctrine of merger forecloses his separate life sentences for conspiracy to commit first degree murder and being an accessory to first degree murder. The doctrine of merger is a product of the double jeopardy clause of the Constitution of the United States and the Wyoming Constitution, both prohibiting multiple punishments for the same offense. *Rivera v. State*, 840 P.2d 933, 942 (Wyo.1992); *Duffy v. State*, 789 P.2d 821 (Wyo.1990). Whether one is being punished twice for the same offense is analyzed under the "statutory elements" test, whereby:

> [T]he first [goal] is to determine whether the offenses have identical elements, and the second is to determine if some elements of either offense are identical to those of the other. In either instance, concerns about double jeopardy are implicated because a second prosecution and sentence for the identical crime or a second prosecution and sentence for a lesser-included crime are proscribed by the double jeopardy clauses of both our state and federal constitutions. The essence of this test is that, when the elements or the facts of a charged offense make it separate and distinct from another charged offense, then the intention of the legislature to authorize separate or cumulative punishments for both offenses is presumed. In such an instance, the trial court can lawfully impose separate and cumulative sentences if the defendant is convicted of both crimes.

*DeSpain v. State*, 865 P.2d 584, 589 (Wyo. 1993); *followed in Owen v. State*, 902 P.2d 190, 193 (Wyo.1995).

Conspiracy and the completed substantive offense are separate offenses because they incorporate different elements requiring different evidence to prove each of the charges. *Harvey v. State,* 835 P.2d 1074, 1077–78 (Wyo.1992); *Garcia v. State,* 774 P.2d 623, 624 (Wyo.1989); *Schultz v. State,* 751 P.2d 367, 370 (Wyo.1988). The record in this case demonstrates that the evidence necessary to support the conspiracy charge is different from the evidence required to support the accessory to murder charge. The requisite agreement formed to commit the murder was made, and once either Vena or Brown took any action that would constitute an overt act, the crime of conspiracy was completed. The record discloses that Vena and Brown planned the victim's murder; armed Brown with a shotgun and special shells; and drove to the Detail Center. At that juncture the crime of conspiracy had been completed, and the victim had not yet been killed.

In connection with the charge of being an accessory to first degree murder, it was essential to demonstrate that the victim was killed, and Brown and Vena then disposed of the body and concealed the murder by disposing of the shotgun and discarding their bloody clothes, in addition to removing blood stains from the car and the Detail Center. It was necessary that the State establish those facts in order for Vena to be convicted of the separate and distinct offense of accessory to first degree murder. Consequently the doctrine of merger was not applicable, and the trial court was vested with discretion to determine whether sentences for separate crimes should be imposed consecutively or concurrently. *Apodaca v. State,* 891 P.2d 83 (Wyo.1995).

We turn to the last two issues raised by Vena. He asserts that the district court erred when it denied his motion for a mistrial and that error also occurred in the failure to admit into evidence the entirety of his confession upon his request. The determination of a motion for a mistrial and rulings with respect to the admissibility of evidence are matters within the sound discretion of the trial court. Such rulings "will not be overturned on appeal without demonstration of a clear abuse of discretion." *Vit v. State,* 909 P.2d 953, 956 (Wyo. 1996); *Hodges v. State,* 904 P.2d 334 (Wyo. 1995). An abuse of discretion is not found unless the court acts in a way that exceeds the bounds of reason or constitutes an error of law under the circumstances. *Vit v. State,* 909 P.2d at 956; *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980). Stated another way:

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985).

*Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986); *See also, Vit v. State,* 909 P.2d at 957; *Hogan v. State,* 908 P.2d 925, 928 (Wyo. 1995); *Bird v. State,* 901 P.2d 1123, 1131 (Wyo.1995); *Cavender v. State,* 860 P.2d 1162, 1164 (Wyo.1993); *Rude v. State,* 851 P.2d at 23.

In asserting his right to a mistrial, Vena argues that a police officer testified with respect to his "prior narcotics involvement," and that this testimony violated an order *in limine* entered by the district court. The testimony that Vena points to is:

Q. Okay. Now, back to that point in time, what differences, if any, did he relate now on December 5th compared to your first interview on December 2nd?

A. Several differences. Now I asked him to start the interview by explaining to me his knowledge of the death of [the victim]. He did so. He started by saying that he was with Mr. Brown on the night of the 28th when Mr. Brown shot him with a shotgun. He stated that he helped dispose of the body, that the shooting took place in the Detail Center, in [the victim's] room where he was sleeping while he was on the cot. They used a vehicle owned by his accountant to transport the body to the State of Colorado, that they took the clothes and the weapon itself, the shotgun, dismantled the shotgun and threw it along I–80 west

of Cheyenne, different locations. He stated that he, in fact, did have a shotgun in his apartment when he lived over on Parkview at one time prior to this, that Paul Brown brought the shotgun over, that he kept it in his bedroom closet at one point. He kept it in his living room closet at one point. **That the reason that the shotgun come over there to his apartment, Mr. Vena's apartment is because he had been having some trouble with some individuals, referenced some money owed because of a dope deal.**

(Emphasis added). The point of Vena's argument here, which he made at trial, is that this constituted improper character evidence in violation of WYO. R. EVID. 404(b).

Vena incorrectly characterizes the position of the district court with respect to his alleged narcotics activity. The district court stated, responding to Vena's request that any prior narcotics activity should be treated as constituting improper character evidence:

So I will sustain the objection to any testimony going to drug dealing between Mr. Vena and others prior to those transactions that he did in cooperation with the ATF. That doesn't mean that I find inadmissible the other testimony that goes with that, as I mentioned a moment ago, the alleged anger on behalf of Mr. Vena and the others. I don't think it's necessary to bring in the drug dealing, and so I'll sustain the objection.

At the time the court ruled, the State's theory of the case was that a motive for Vena and Brown to murder the victim existed because the victim had learned too much about their narcotics activities while they were working as informants for the ATF. The district court ruled explicitly that the State could make reference to those narcotics activities while Vena and Brown were acting in their capacity as informants for the ATF.

When the police officer testified about the narcotics activities prior to Vena's capacity as an ATF informant, the testimony was offered for the limited purpose of demonstrating that Vena had access to the murder weapon, and that he offered an excuse for having the weapon which was not related to the plan to kill the victim. We hold that no abuse of discretion was committed by the district court in its denial of Vena's motion for a mistrial based upon this isolated statement.

 As to Vena's assertion that he had a right to have his full tape-recorded confession played to the jury pursuant to WYO. R. EVID. 106, our examination of the record demonstrates that the entire confession eventually was played before the jury during the testimony of the investigator who had conducted that interview. We cannot conceive of an abuse of discretion on the part of the district court in waiting until the investigator who conducted the actual interview testified before the tape of that interview was played back in its entirety before the jury. There was no error in this regard.

We conclude that no reversible error occurred in Vena's trial, and the Judgment and Sentence entered in the district court must be affirmed.